UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| EMMANUEL PACQUIAO, a Philippines resident,<br><br>              Plaintiff,<br><br>      v.<br><br>FLOYD MAYWEATHER, JR.; et al.,<br><br>              Defendants. | 2:09-cv-2448-LRH-RJJ<br><br>ORDER |

Before the court is defendants Oscar de la Hoya ("de la Hoya") and Richard Schaefer's ("Schaefer") motion to dismiss. Doc. #15.[1] Plaintiff Emmanuel Pacquiao ("Pacquiao") filed an opposition (Doc. #52) to which de la Hoya and Schaefer replied (Doc. #62).

Also before the court is defendant Mayweather Promotions, LLC's ("Mayweather Promotions") motion to dismiss. Doc. #49. Pacquiao filed an opposition (Doc. #90) to which Mayweather Promotions replied (Doc. #96).

**I.      Facts and Background**

Plaintiff Pacquiao is a premier professional boxer from the Philippines. In mid-2009, Pacquiao and non-moving defendant Floyd Mayweather, Jr. ("Mayweather, Jr."), another premier professional boxer, entered into fight negotiations for a late 2009, Las Vegas, Nevada boxing

---

[1] Refers to the court's docket number.

1  match. Eventually, negotiations broke down between the parties and the fight was not scheduled.

2  Subsequently, beginning in September 2009, Pacquiao alleges that defendants stated

3  publicly that he has used, and is using, performance enhancing drugs ("PEDs"), including steroids

4  and human growth hormone ("HGH"). On December 30, 2009, Pacquiao filed a complaint in

5  federal court for defamation against defendants Mayweather, Jr.; de la Hoya; de la Hoya's manager

6  Schaefer; Roger Mayweather ("Roger Mayweather"); Floyd Mayweather, Sr. ("Mayweather, Sr.");

7  and Mayweather Promotions. Doc. #1. Subsequently, on March 17, 2010, Pacquiao filed an

8  amended complaint against all defendants alleging a single cause of action : (1) defamation *per se*.

9  Doc. #13. Thereafter, moving defendants filed the present motions to dismiss. Doc. ##15, 49.

## II.    Legal Standard

Defendants seek dismissal pursuant to Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted. To survive a motion to dismiss for failure to state a claim, a complaint must satisfy the Federal Rule of Civil Procedure 8(a)(2) notice pleading standard. *See Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). That is, a complaint must contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Rule 8(a)(2) pleading standard does not require detailed factual allegations; however, a pleading that offers "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not suffice. *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).

Furthermore, Rule 8(a)(2) requires a complaint to "contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* at 1949 (quoting *Twombly*, 550 U.S. at 570). A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference, based on the court's judicial experience and common sense, that the defendant is liable for the misconduct alleged. *See id.* at 1949-50. "The plausibility standard is not akin to a probability requirement, but it asks for more than a sheer possibility that a defendant has acted unlawfully. Where a complaint pleads facts that are merely consistent with a

defendant's liability, it stops short of the line between possibility and plausibility of entitlement to relief." *Id.* at 1949 (internal quotation marks and citation omitted).

In reviewing a motion to dismiss, the court accepts the facts alleged in the complaint as true. *Id.* However, "bare assertions . . . amount[ing] to nothing more than a formulaic recitation of the elements of a . . . claim . . . are not entitled to an assumption of truth." *Moss v. U.S. Secret Serv.*, 572 F.3d 962, 969 (9th Cir. 2009) (quoting *Iqbal*, 129 S. Ct. at 1951) (brackets in original) (internal quotation marks omitted). The court discounts these allegations because "they do nothing more than state a legal conclusion—even if that conclusion is cast in the form of a factual allegation." *Id.* (citing *Iqbal*, 129 S. Ct. at 1951.) "In sum, for a complaint to survive a motion to dismiss, the non-conclusory 'factual content,' and reasonable inferences from that content, must be plausibly suggestive of a claim entitling the plaintiff to relief." *Id*.

**III.   Discussion**

To establish a prima facie case of defamation, a plaintiff must allege: (1) a false and defamatory statement by the defendant concerning the plaintiff; (2) an unprivileged publication to a third person; (3) fault, amounting to at least negligence; and (4) actual or presumed damages. *Wynn v. Smith*, 16 P.3d 424, 427 (Nev. 2001). A statement may only be defamatory if it contains a factual assertion that can be proven false. *See Flowers v. Carville*, 112 F. Supp. 2d 1202, 1210 (D. Nev. 2000).

The determination of whether a statement is capable of a defamatory construction is a question of law. *Branda v. Sanford*, 637 P.2d 1223, 1225-26 (Nev. 1981)."In reviewing an allegedly defamatory statement, the words must be viewed in their entirety and in context to determine whether they are susceptible of a defamatory meaning." *Lubin v. Kunin*, 17 P.3d 422, 425-26 (Nev. 2001) (internal quotations omitted). In Nevada, in order to determine if a statement is one of fact or opinion, "the court must ask whether a reasonable person would be likely to understand the remark as an expression of the source's opinion or as a statement of existing fact." *Pegasus v. Reno Newspapers, Inc.*, 57 P.3d 82, 87 (Nev. 2002); *see also, Wynn*, 16 P.3d at 431. If a

statement is susceptible to different constructions, resolution of any ambiguity is a question of fact for the jury. *Branda v. Sanford*, 637 P.2d 1223, 1225-26 (Nev. 1981).

As a general rule, "only assertions of fact, not opinion, can be defamatory. However, expressions of opinion may suggest that the speaker knows certain facts to be true or may imply that facts exist which will be sufficient to render the message defamatory if false." *Wynn*, 16 P.3d at 431 (citing *K-Mart Corporation v. Washington*, 866 P.2d 274, 281 (Nev. 1993)). Further, "statements of belief are defamatory if they imply the existence of defamatory facts that are not disclosed to the listener . . . for example, the statement I think he must be an alcoholic is actionable because a jury might find that it implied that the speaker knew undisclosed facts justifying his opinion." Restatement (Second) Torts, § 556; *see also, Gordon*, 2008 U.S. Dist. Lexis 51863, *11 ("Any statement which presupposes defamatory facts unknown to the interpreter is defamatory.").

Here, moving defendants argue that the amended complaint should be dismissed because: (1) the alleged statements are not defamatory in nature; and (2) Pacquiao has failed to plead malice as required by a public figure. *See* Doc. ##15, 49. Further, moving defendants argue that Pacquiao's conspiracy allegations should be stricken from the complaint because Pacquiao has failed to state a separate cause of action for a civil conspiracy. *Id*. The court shall address each argument below.

**A. Defendants' Statements**

In the amended complaint, Pacquiao alleges that moving defendants made defamatory statements that he has used, and is using, performance enhancing drugs. Specifically, Pacquiao alleges that defendant Schaefer told a Philippines news reporter that he "was sure" that Pacquiao uses PEDs. *See* Doc. #13, ¶29 ("On information and belief, in mid-September 2009, a sports reporter for the Philippines publication *Manila Standard Today* and boxing website philboxing.com Ronnie Nathanielsz, visited Golden Boy's offices in Los Angeles. Mr. Nathanielsz met with Golden Boy CEO Schaefer to discuss several boxing topics, including Pacquiao. During the meeting, Schaefer stated that he was sure Pacquiao was using performance-enhancing drugs

4

1  and had used them in the past."). Further, Pacquiao alleges defendant de la Hoya compared
2  Pacquiao's punches to two other fighters known to have used PEDs during their fights. *See* Doc.
3  #13, ¶36 ("If Pacquiao, the toughest guy on the planet, is afraid of needles and having a few
4  tablespoons of blood drawn from his system, then something is wrong. The guy has tattoos
5  everywhere; he's tattooed from top to bottom. You're telling me he's afraid of needles? . . . Now I
6  have to wonder about him. I'm saying to myself, "Wow, those Mosley punches, those Vargas
7  punches and those Pacquiao punches all felt the same." I'm not saying yes or no. I'm just saying
8  that now people have to wonder, "Why doesn't he want to do [even more blood tests]? Why it is
9  such a big deal?").

10  Finally, Pacquiao alleges that Mayweather Promotions' CEO, non-party Leonard Ellerbe
11  ("Ellerbe"), and President, defendant Mayweather, Jr.,[2] made statements to the press where they
12  stated and/or inferred that Pacquiao was using PEDs. *See* Doc. #13, ¶30 ("[O]n or around October
13  29, 2009, Mayweather, Jr. gave an interview on Sirius Satellite Radio. During the nationally-
14  broadcast interview, the host asked Mayweather, Jr. to explain how his physical development
15  differed from that of Pacquiao. When Mayweather, Jr. responded, "cause we know the Phillippines
16  got the best enhancing drugs," the host observed, "[s]o he's saying Pacquiao's taking enhancement
17  drugs."); Doc. #13, ¶34 ("This is a simple question. If you have nothing to hide, then why not
18  comply [with even more blood tests]?"); Doc. #13, ¶35 (Mayweather, Jr. issued a statement that he
19  had "great doubt as to the level of fairness [he] would be facing in the ring that night."); Doc. #13,

---

[2] In its motion to dismiss, Mayweather Promotions argues that it is not responsible for the alleged defamatory statements of its President, Mayweather, Jr., because the statements were not authorized communications of Mayweather Promotions.
   Generally, a company is responsible for the defamatory statements made by its agents and employees. *See Coastal Abstract Serv., Inc. v. First American Title Ins. Co.,* 173 F.3d 725, 732 (9th Cir. 1999); *see also, Rockwell v. Sun Harbor Budget Suites*, 902 P.2d 1175, 1180 (Nev. 1996) (holding that an employer is liable for the intentional torts of its employees if the tort occurs within the scope of the employee's duties). Here, the allegations in the amended complaint establish that Mayweather, Jr.'s statements were made within the scope of his role as both boxing competitor and promoter for Mayweather Promotions. Therefore, the court finds that for purposes of the motion to dismiss, Pacquiao has sufficiently alleged that Mayweather Promotions is liable for the statements of its President in this matter. Accordingly, the court shall deny Mayweather Promotions' motion as to this issue.

1 ¶42 ("On or about March 4, 2010, at a press junket for his upcoming fight, Mayweather, Jr. stated that 'Pacquiao's got the power pellets, yo, and the steroid juice. Pacquiao got the power pellets you know.'").

The court has reviewed the documents and pleadings on file in this matter, as well as the arguments made by counsel at the March 3, 2011 motion hearing, and finds that defendants' alleged statements are actionable defamatory statements because they falsely assert an objective fact; namely, that Pacquiao was using and had used PEDs. First, the court finds that a reasonable listener would understand and interpret the moving defendants' statements to imply that Pacquiao has used and is using PEDs. *See e.g.,* Doc. #13, ¶36 (defendant de la Hoya's statement comparing Pacquiao's punches as similar to other fighters who have taken PEDs); Doc. #13, ¶30 (defendant Mayweather, Jr.'s statement that Pacquiao's physical development is a result of the Phillippines having access to the best performance enhancing drugs). Further, the court finds that the alleged statements are presupposed facts not available to a reasonable listener but that a reasonable listener would assume implied actual knowledge of the statement's truth. *See e.g.,* Doc. #13, ¶29 (defendant Schaefer's statement that he "was sure" that Pacquiao uses PEDs); Doc. #13, ¶42 (defendant Mayweather, Jr.'s statement that Pacquiao has "the power pellets, yo, the steroid juice."). "Any statement which presupposes defamatory facts unknown to the interpreter is defamatory." *Gordon*, 2008 U.S. Dist. Lexis 51863, *11. Therefore, taking all of the allegations in the amended complaint as true, the court finds Pacquiao has sufficiently alleged a cause of action for defamation per se against moving defendants.

**B. Malice**

Pacquiao is a world famous boxer. As such, he is a public figure for First Amendment purposes. *See Pegasus*, 57 P.3d at 91. In a defamation claim, public figures must plead actual malice by the defendants in making the alleged defamatory statements. *Wynn*, 16 P.3d at 430. Actual malice is defined as "knowledge of the falsity of a statement or a reckless disregard for its truth." *Posadas v. City of Reno*, 851 P.3d 438, 443 (Nev. 1993). Reckless disregard for the truth of

6

1  a statement exists where there is a high degree of awareness of the probable falsity of a statement.
2  *Wynn*, 16 P.3d at 430. "It may be found where the defendant entertained serious doubts as to the
3  truth of the statement, but published it anyway." *Id*.

4  Moving defendants argue that Pacquiao has failed to sufficiently allege malice because
5  moving defendants could not have known one way or the other whether Pacquiao had actually
6  taken PEDs when they made the alleged defamatory statements. However, the court finds that
7  Pacquiao has sufficiently pled malice in the amended complaint. A plaintiff need only "aver the
8  required state of mind generally, without alleging corroborating evidence" to survive a motion to
9  dismiss on the issue of malice. *Flowers,* 310 F.3d at 1131. In the amended complaint, Pacquiao
10 alleges the following:

11 • "[Defendants are] motivated by ill-will, spite, malice, revenge, and envy.
12   Mayweather, Jr. and the others set out on a course designed to destroy
13   Pacquiao's career, reputation, honor, legacy, and jeopardize his ability to
14   earn the highest levels of compensation." Doc. #13, ¶8.
15 • "de la Hoya made these statements out of malice and spite." *Id.*, ¶37.
16 • "Given Pacquiao's spotless record with drug tests over the course of his
17   15-year career and the absence of any evidence suggesting his use of
18   performance-enhancing drugs, defendants issued these statements with
19   actual knowledge that such statements were false and in reckless disregard
20   for their falsity. In either case, defendants issued these statements
21   intending to harm Pacquiao." *Id*., ¶52.

22 The court finds that these allegations are sufficient to aver that defendants' acted with malice in
23 making the alleged defamatory statements.

24   **C. Conspiracy Allegations**

25 In the amended complaint, Pacquiao alleges that defendants engaged in a conspiracy to
26 defame him. *See* Doc. #13, ¶49. Moving defendants argue that Pacquiao has failed to allege a claim

7

for civil conspiracy because the amended complaint fails to plead with requisite specificity how each defendant joined the conspiracy and what actions each defendant took in furtherance of the conspiracy. *See Arroyo v. Wheat*, 591 F. Supp. 141, 144 (D. Nev. 1984) (a civil conspiracy must be pled with particular specificity as to "the manner in which a defendant joined in the conspiracy and how he participated in it.").

However, the court notes that Pacquiao is not attempting to allege a separate cause of action for civil conspiracy. Rather, Pacquiao's conspiracy allegations are alleged solely within the context of his defamation per se claim. Specifically, Pacquiao alleges that defendants, together, conspired to defame him by publicly stating that he used PEDs. *See* Doc. #13, ¶49. These allegations support his claim for malice. Therefore, the court finds that the conspiracy allegations are sufficient within the context of the defamation per se claim and should not be stricken from the amended complaint. Accordingly, the court shall deny moving defendants' motions to dismiss.

IT IS THEREFORE ORDERED that defendants' motion to dismiss (Doc. #15) is DENIED.

IT IS FURTHER ORDERED that defendant's motion to dismiss (Doc. #49) is DENIED.

IT IS SO ORDERED.

DATED this 18th day of March, 2011.

_____
LARRY R. HICKS
UNITED STATES DISTRICT JUDGE