1   DANIEL M. PETROCELLI (Cal S.B. #97802)
    (admitted *pro hac vice*)
2   dpetrocelli@omm.com
    DAVID MARROSO (Cal. S.B. #211655)
3   (admitted *pro hac vice*)
    dmarroso@omm.com
4   O'MELVENY & MYERS LLP
    1999 Avenue of the Stars, 7th Floor
5   Los Angeles, CA 90067-6035
    Telephone:   (310) 553-6700
6   Facsimile:    (310) 246-6779

7   ERIC D. HONE
    Nevada Bar No. 8449
8   ehone@gordonsilver.com
    FRANCHESCA V. VAN BUREN
9   Nevada Bar No. 10260
    fvanburen@gordonsilver.com
10  GORDON SILVER
    3960 Howard Hughes Pkwy., 9th Floor
11  Las Vegas, Nevada 89169
    Tel: (702) 796-5555
12  Fax: (702) 369-2666
    Attorneys for Plaintiff and Counter-Defendant
13  Emmanuel "Manny" Pacquiao

14              **UNITED STATES DISTRICT COURT**

15                  **DISTRICT OF NEVADA**

16  EMMANUEL PACQUIAO, a            Case No. 2:09-cv-02448 LRH RJJ
    Philippines resident,
17                                  Hon. Larry R. Hicks
                Plaintiff,
18                                  **DECLARATION OF DAVID**
         v.                         **MARROSO IN SUPPORT OF**
19                                  **PLAINTIFF'S RENEWED**
    FLOYD MAYWEATHER, JR., a        **MOTION FOR ATTORNEY'S**
20  Nevada resident; FLOYD         **FEES**
    MAYWEATHER, SR., a Michigan
21  resident; ROGER MAYWEATHER, a
    Nevada resident;
22  MAYWEATHER PROMOTIONS LLC,
    a Nevada limited liability company,
23
                Defendants.
24

25

26

27

28

1

## DECLARATION OF DAVID MARROSO

2      I, DAVID MARROSO, declare:

3      1.     I am an attorney licensed to practice law in the State of California and
4 have been admitted *pro hac vice* to practice before this Court in the above-
5 captioned matter.  I am a partner of the law firm of O'Melveny & Myers LLP,
6 counsel for Plaintiff Emmanuel "Manny" Pacquiao.

7      2.     On October 18, 2011, this Court granted in part Mr. Pacquiao's motion
8 for sanctions against Defendant Floyd Mayweather, Jr.  The Court found that
9 "monetary sanctions related to the cost of [Mayweather's] deposition, as well as
10 attorney's fees relating to that deposition and the present motion are appropriate in
11 light of Mayweather, Jr.'s failure to comply with a court order and attend his
12 deposition."  The Court ordered Mr. Pacquiao to file a "motion for attorney's fees"
13 which complies with Local Rule 54-16.  Mr. Pacquiao submitted the motion on
14 October 28, 2011.  On December 19, the Court found that Mr. Pacquiao's motion
15 and supporting declaration did "not fall within the 'reasonable itemization' confines
16 of LR 54-16."  (Dkt. No. 155.)  The Court denied the motion without prejudice.

17      3.     Consistent with the Court's guidance, Mr. Pacquiao submits this
18 renewed motion for attorney's fees that includes a "thorough breakdown of time
19 including identifying the individuals who provided the work, what was being
20 worked on, and the amount of time spent on the particular item."  (*Id.*)  To satisfy
21 these requirements, Mr. Pacquiao submits with the renewed motion a detailed
22 spreadsheet that mirrors and organizes the actual invoices submitted to
23 Mr. Pacquiao.  The spreadsheet identifies every task performed, the date on which
24 the task was performed, the attorney who performed the task, a detailed description
25 of the work performed, the amount of time expended on each task, and the amount
26 of money billed to Pacquiao for the task.

27      4.     I have personal knowledge of facts set forth below.  If called as a
28 witness, I could and would competently testify to them.

1

1

**Retention of Counsel**

2          5.      O'Melveny & Myers has represented Manny Pacquiao and his boxing

3    promoter, Top Rank, Inc., since 2006.  Over the last five years, my partner Daniel

4    Petrocelli and I have been responsible for O'Melveny's representation of

5    Mr. Pacquiao.  We have represented Mr. Pacquiao in federal court, state court, and

6    various non-judicial forums, such as mediation before retired judges.

7          6.      For that reason, when Mr. Pacquiao first learned that the defendants in

8    this matter publicly stated that Mr. Pacquiao has taken and is taking performance-

9    enhancing drugs, he immediately retained O'Melveny to represent his interests.

10          7.      Without disclosing attorney-client information, it is my understanding

11    that Mr. Pacquiao retained O'Melveny based on:

12               (a) his history and relationship with Mr. Petrocelli and myself;

13               (b) the trust Mr. Pacquiao has in our skills and our experience

14               representing individuals (including athletes) in high-profile matters,

15               including in defamation / libel matters;

16               (c) the gravity of the statements the defendants had leveled against

17               Mr. Pacquiao—*i.e.*, as the complaint alleges, "[t]here is nothing more

18               injurious to a professional athlete than to be publicly branded a cheater;

19               and in today's world, to be falsely accused of taking steroids and other

20               performance-enhancing drugs is deadly.  In the court of public opinion,

21               'illegal performance enhancement is the new witch hunt, the new red

22               scare…  [i]f you were accused of it, you were it, until you proved

23               otherwise.'"[1]; and

24               (d) the worldwide dissemination of defendants' statements.

25

**Staffing**

26          8.      We staffed this case leanly.

27

---

28    [1] G. Doyel, *Boxing's bloody mess: Pacquiao meet McGwire*, CBS Sports, Dec. 27, 2009, *available at*
http://www.cbssports.com/columns/story/12711653/boxings-bloody-mess-pacquiao-meet-mcgwire

MARROSO DECLARATION
CASE NO. 09-CV-02448

1        9.      Daniel Petrocelli is our team's lead trial lawyer and provides overall

2   strategic guidance.  Mr. Petrocelli is a senior partner in O'Melveny's Century City

3   office, Chair of the Business Trial and Litigation Practice, and Mr. Pacquiao's lead

4   lawyer in this case.  Mr. Petrocelli is a 1980 *magna cum laude* graduate of

5   Southwestern University Law School and a leading member of *The American*

6   *Lawyer's* 2004 "Litigation Department of the Year."  Mr. Petrocelli has nearly 30

7   years of experience as a trial lawyer and litigator.  He has a national trial practice

8   representing clients in major litigation in a wide variety of areas, including

9   entertainment, intellectual property, unfair competition, and business torts.

10  Mr. Petrocelli is a frequent national commentator on trials and other legal issues, as

11  well as a featured speaker on legal issues at business groups, bar and judges

12  associations, and citizens groups.  He has won numerous awards, including

13  Southwestern University Alumnus of the Year; Century City Bar Association

14  Litigator of the Year; Malibu Bar Association Trial Lawyer of the Year; San Diego

15  Trial Lawyers Association Trial Lawyer of the Year; one of Los Angeles' Top 50

16  Litigators by the Los Angeles Business Journal; one of the Lawyers of the Year by

17  California Lawyer; named a "Super Lawyer" in a survey conducted by Law &

18  Politics Media Inc., and published in Los Angeles magazine; named in Best

19  Lawyers in America—Commercial Litigation (2010); and named a "Leading

20  Lawyer in Litigation" by Guide to the World's Litigation Lawyers (2008).  As we

21  explain below, although Mr. Petrocelli was involved in and oversaw all aspects of

22  the work performed, Mr. Pacquiao does not seek reimbursement for any of

23  Mr. Petrocelli's time incurred on this matter.

24       10.     David Marroso.  I am the partner in charge of day-to-day activity on

25  the matter, including the work performed in connection with this motion.  I am a

26  2000 graduate of Harvard Law School, *magna cum laude*, clerked for the

27  Honorable Stephen S. Trott of the United States Court of Appeal for the Ninth

28  Circuit, and have been a litigator at O'Melveny since 2001.  I am a member of

MARROSO DECLARATION
CASE NO. 09-CV-02448

1   O'Melveny's Business Trial and Litigation Practice and have appeared in state and

2   federal Trial, Appellate, and Supreme Courts.  Among other clients, I have

3   represented Mr. Pacquiao, Top Rank, and other boxers for the last five years.  My

4   billing rate is $695 an hour.

5          11.    Harrison Whitman.  Harrison Whitman is the only associate from

6   O'Melveny staffed on this matter.[2]  Mr. Whitman is a 2008 graduate of Georgetown

7   University Law School, *cum laude*.  His practice focuses on commercial litigation

8   and has appeared in state and federal courts.  Mr. Whitman has represented

9   Mr. Pacquiao, Top Rank, and other sports-related clients for the past two years.

10  Mr. Whitman's billing rate is $495 an hour.

11         12.    Gordon Silver.  Eric Hone and Franchesca Van Buren from Gordon

12  Silver's Las Vegas office work closely with O'Melveny and serve as local counsel

13  in this matter.  We have worked with Mr. Hone and Ms. Van Buren on several

14  matters, including matters for Mr. Pacquiao's promoter, Top Rank.  Mr. Hone is a

15  shareholder in the Gordon Silver's litigation and entertainment & sports

16  departments.  His practice focuses on business litigation and sports and

17  entertainment law, representing clients in commercial, contract and securities

18  disputes.  Mr. Hone represents major sports promoters including Zuffa, LLC d/b/a

19  The Ultimate Fighting Championship and Top Rank, Inc., Nevada gaming

20  licensees, developers and real estate industry clients.  Mr. Hone was included in the

21  2009 and 2010 edition of the Legal Elite Top 100, published by *Nevada Business*.  I

22  am informed that Mr. Hone typically bills clients at $475 per hour.

23         13.    Ms. Van Buren is an associate in Gordon Silver's commercial

24  litigation and entertainment & sports departments.  Ms. Van Buren's practice

25  consists primarily of high-stakes business disputes.  She has experience litigating

26  complex commercial matters on behalf of clients in such diverse industries as

27  _____

28  [2] As explained below, another O'Melveny associate assisted with Mr. Pacquiao's Motion for
    Sanctions because Mr. Whitman was part of teams in intense preparations on other matters.

MARROSO DECLARATION
CASE NO. 09-CV-02448

hospitality, sports and entertainment, gaming, real estate and construction.  She was named a Rising Star in 2010 by the Las Vegas Business Press, one of 10 young professionals chosen that year, "represent[ing] some of the best and brightest the Southern Nevada business community has to offer."  I am informed that Ms. Van Buren typically bills clients at $320 per hour.

14.     Mr. Hone and Ms. Van Buren were involved in all aspects of the work performed.  However, in an abundance of caution and to avoid the perception that Mr. Pacquiao seeks a "windfall" by having primary and local counsel, Mr. Pacquiao does <u>not</u> seek reimbursement for any of Gordon Silver's time incurred on this matter.

**Preparation of this Declaration / Summary of Fees and Costs Requested**

15.     I am the partner in charge of billing Mr. Pacquiao for work performed by O'Melveny in this matter.  Generally speaking, O'Melveny submits monthly invoices to Mr. Pacquiao.  I review the invoices for accuracy, completeness, and reasonableness before they are submitted to Mr. Pacquiao.  As the partner in charge of day-to-day activity and the partner in charge of billing on this matter, I am readily familiar with all work performed by O'Melveny's attorneys, the tasks identified, and the amounts billed to Mr. Pacquiao.

16.     Furthermore, to prepare this declaration, I and others acting under my direction re-reviewed the invoices and billing entries to identify those tasks which, in my view, qualify as "attorney's fees relating to [Mr. Mayweather's] deposition and the present motion."  For each such task, we (a) identified the assigned timekeeper; (b) ensured the task fit within the Court's parameters; (c) quantified the amount of time and fees incurred for the task; and (d) confirmed Mr. Pacquiao was actually billed for the services.

17.     In this process, I took and directed others to take a conservative approach.  For example, although the Court's Order appears to contemplate

5

MARROSO DECLARATION
CASE NO. 09-CV-02448

1   recovery for the following, Mr. Pacquiao does <u>not</u> seek reimbursement for (a) work

2   performed by Mr. Petrocelli; (b) work performed by Gordon Silver; (c) work

3   performed by paralegals or staff; (d) our initial efforts in June 2011 to schedule

4   Mr. Mayweather's deposition; or (e) for work preformed in actually preparing for

5   Mr. Mayweather's June 17 deposition (for which he did not appear).

6       18.   Accounting for all exclusions, between June and October 2011,

7   O'Melveny attorneys spent <u>193 hours</u> opposing Mayweather's emergency motion

8   for protective order, emergency appeal, attempting to reschedule Mayweather's

9   examination after he missed the court-ordered deposition date, and filing the

10  underlying motion for sanctions.  Mr. Pacquiao incurred <u>$95,959.00 in attorneys'</u>

11  <u>fees and $259.50 costs</u> in connection with these tasks.  Accounting for all

12  exclusions, O'Melveny attorneys spent <u>27 hours</u> preparing, researching, and filing

13  the initial motion for attorney's fees.  Mr. Pacquiao incurred <u>$15,325.00</u> in

14  connection with that motion.  Consistent with the Court's instruction, Mr. Pacquiao

15  does not seek reimbursement for any aspect of this renewed motion.

16      19.   In support of this renewed motion, I and others at my direction

17  prepared a detailed spreadsheet to provide the Court a thorough, detailed, and

18  itemized breakdown of (i) every task performed; (ii) the date on which the task was

19  performed; (iii) the attorney who performed the task; (iv) the description of the

20  work performed; (v) the amount of time expended on each task; and (vi) the amount

21  of money billed to Mr. Pacquiao for the task.  The information on the spreadsheet

22  was taken directly from the actual invoices submitted to Mr. Pacquiao.  We

23  organized the information by general categories that correspond to sections in the

24  Renewed Motion: "Emergency Briefing," "Effort to Reschedule Deposition,"

25  "Motion for Sanctions," and "Motion for Attorney's Fees."  The spreadsheet is

26  attached as Exhibit A.[3]

27

28  ───────────────
    [3] We submit the spreadsheet under seal because of the sensitive, confidential, and privileged
    nature of the information it contains.

MARROSO DECLARATION
CASE NO. 09-CV-02448

**Efforts to Schedule Mayweather Jr.'s Deposition**

20.    The Court issued a Scheduling Order on June 2, 2011.  We immediately tried to schedule Mr. Mayweather Jr.'s deposition because he (and only he) possesses certain information regarding (1) other potential defendants; (2) knowledge of the falsity of his statements; (3) the malice with which he acted; and (4) information related to his counterclaim and asserted damages.

21.    On June 3, 2011, we served Mr. Mayweather with a Notice of Deposition calling for him to appear on Friday, June 17 in Las Vegas, Nevada. Counsel for Mr. Mayweather notified us that June 17 was not convenient.  We exchanged several letters about rescheduling.  Although we believe that under the Court's Order Mr. Pacquiao is entitled to reimbursement of fees incurred in connection with these unsuccessful efforts to schedule Mr. Mayweather's deposition, we have excluded them from this request.

**Opposing Mr. Mayweather's Emergency Briefing**

22.    On June 14, Mr. Mayweather filed an "Emergency Motion for Protective Order" asking the Court to postpone for three months the deposition scheduled for three days later.  (Dkt. No. 122.)   The Emergency Motion was supported by two declarations of Mr. Mayweather's counsel consisting of 27 paragraphs, and had 5 exhibits.

23.    On short notice, O'Melveny researched, drafted, and submitted a 9 page opposition, my 15 paragraph declaration, and included 7 exhibits constituting 23 pages.

24.    On June 16, Magistrate Judge Johnston denied Mr. Mayweather's motion and ordered "that the deposition of Defendant Floyd Mayweather, Jr. shall proceed as noticed [on June 17]."  (Dkt. No. 124.)

25.    The same day, June 16, Mr. Mayweather filed an "Emergency Appeal of Judge Johnston's Order" accompanied by 16-paragraph declaration of counsel. (Dkt. No. 125.)

26.     Again on short notice, O'Melveny researched, drafted, and submitted a formal opposition.

27.     In total, O'Melveny spent 25.9 hours and Mr. Pacquiao incurred $14,460.50 in attorney's fees opposing the "emergency" motion and appeal and accompanying requests.  (*See* Exhibit A, Category "Emergency Briefing.")

### Mr. Mayweather's Non-Appearance

28.     Mr. Mayweather defied the Court Order and refused to appear for his deposition on June 17.

29.     Pacquiao incurred $259.50 from the court reporter when Mayweather did not appear for his deposition.

### Attempt to Reschedule Mr. Mayweather's Deposition

30.     After Mr. Mayweather did not appear, we tried for weeks to reschedule the deposition and avoid the need to seek court intervention and the expenses incurred with a significant motion for sanctions.  To that end, I offered more than 13 additional dates in June and July to take Mr. Mayweather's deposition.  Counsel for Mr. Mayweather rejected every alternative.  (Dkt. No. 131, Exs. 22, 24.)

31.     In total, O'Melveny spent 7.5 hours and Mr. Pacquiao incurred $4,632.50 in attorney's fees trying to reschedule Mr. Mayweather's deposition. (*See* Exhibit A, Category "Effort to Reschedule Deposition.")

### Motion for Default Judgment and Sanctions

32.     While we were attempting to reschedule Mr. Mayweather's deposition, we began to uncover evidence that Mr. Mayweather was not in an all-encompassing physical training camp, as he had represented to us and the Court.  As explained below, we (a) developed a substantial body of evidence showing where Mr. Mayweather was on certain dates, cross-referenced and contrasted it with representations he had made, (b) conducted significant legal research on the nature, scope, and magnitude of sanctions based on litigation and discovery misconduct;

1  and (c) drafted the motion for sanctions, reply in support thereof, and opposed

2  Mr. Mayweather's motion to strike objections:

3        33.    <u>Factual Investigation</u>.  At my direction, we began an intensive factual

4  investigation into Mr. Mayweather's whereabouts and activities on dates we offered

5  for deposition, including:

6        • monitoring Mr. Mayweather's social media websites such as Twitter;

7        • searching public internet blogs for discussion and evidence of

8          Mr. Mayweather's whereabouts;

9        • reviewing internet news sources for reports and photographic/video

10         evidence of his whereabouts and activities;

11       • reconciling different news stories and reports;

12       • compiling the evidence of Mr. Mayweather's whereabouts and

13         activities;

14       • confirming the efficacy of the evidence; and

15       • preparing a timeline tracking Mr. Mayweather's movements and

16         activities.

17       34.    <u>Legal Research</u>.  Given the nature of Mr. Mayweather's misconduct

18  and gravity of the relief we requested, we conducted expansive legal research

19  concerning Rule 37, Ninth Circuit authority regarding misconduct and terminating

20  sanctions, standards of review, necessity for hearing, and out-of-circuit authority on

21  propriety of evidentiary, issue and monetary sanctions for similar misconduct.

22       35.    <u>Motion and Reply</u>.  Mr. Pacquiao's 15-page Motion for Sanctions was

23  supported by an extensive declaration (by me) consisting of more than 40

24  paragraphs and attaching 49 separate exhibits.

25       36.    Mr. Mayweather filed his opposition brief on August 22.  (Dkt. No.

26  135.)  At that time, Mr. Whitman was in intense preparations for a trial in another

27  matter.  Accordingly, I asked another O'Melveny associate, Matthew Mrkonic who

28  has assisted in other boxing matters, to assist me with the reply.

9

MARROSO DECLARATION
CASE NO. 09-CV-02448

1     37.    In response to Mr. Mayweather's opposition and the declarations

2 submitted in support thereof, we conducted additional factual and legal research

3 and prepared a 12-page reply plus Objections to certain aspects of the declaration

4 submitted by one of Mr. Mayweather's counsel.  (Dkt. No. 138.)

5     38.    On September 19, 2011, Mr. Mayweather filed a "Motion to Strike"

6 the objections, which required a formal response.  (Dkt. No. 139.)  We researched

7 the law and drafted a 9-page opposition.  (Dkt. No. 141.)

8     39.    In total, O'Melveny spent 159.6 hours and Mr. Pacquiao incurred

9 $76,866.00 in attorney's fees in connection with the Motion for Sanctions, the

10 Reply in Support of Motion for Sanctions, and the Opposition to Mayweather's

11 Motion to Strike Objections.  (*See* Exhibit A, Category "Motion for Sanctions.")

12     **Motion for Attorney's Fees**

13     40.    On October 18, the Court entered an order directing Mr. Pacquiao to

14 file a motion for attorney's fees.  We quickly began preparing this filing.  First, we

15 researched the district of Nevada and Ninth Circuit jurisprudence for awards of

16 attorney's fees, as well as the award of attorney's fees in comparable cases.  We

17 then collected and organized the work we had preformed, and drafted the motion

18 for attorney's fees and my supporting declaration.

19     41.    On November 16, Mr. Mayweather Jr. filed an opposition to the

20 motion.  We reviewed the opposition and the authorities cited therein, conducted

21 the necessary follow-up research, and drafted a reply brief.   This motion seeks

22 reimbursement of $15,325.00 for 27 hours of work performed.  (*See* Exhibit A,

23 Category "Motion for Attorney's Fees.")

24

25

26

27

28

MARROSO DECLARATION
CASE NO. 09-CV-02448

1         I declare under penalty of perjury under the laws of the United States of

2    America that the foregoing is true and correct.

3

4         Executed this 29th day of December 2011 at Los Angeles, California.

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

MARROSO DECLARATION
CASE NO. 09-CV-02448

FILED UNDER SEAL

**EXHIBIT_A**