Mark G. Tratos (Bar No. 1086)
tratosm@gtlaw.com
Thomas F. Kummer (Bar No. 1200)
kummert@gtlaw.com
Laraine M.I. Burrell (Bar No. 8771)
burrelll@gtlaw.com
GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
*Counsel for Defendants*
*Floyd Mayweather, Jr. and*
*Mayweather Promotions, LLC*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| EMMANUEL PACQUIAO,<br><br>          Plaintiff,<br><br>v.<br><br>FLOYD MAYWEATHER, JR., FLOYD MAYWEATHER, SR., ROGER MAYWEATHER, MAYWEATHER PROMOTIONS LLC.<br><br>          Defendants. | Case No. 2:09-CV-02448-LRH-RJJ<br><br>**DEFENDANT FLOYD MAYWEATHER, JR.'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR ATTORNEYS' FEES**<br><br>**ORAL ARGUMENT REQUESTED** |

Defendant Floyd Mayweather, Jr. ("Mayweather"), hereby opposes Plaintiff Emmanuel Pacquiao's ("Pacquiao") renewed motion for attorneys' fees (Doc. No. 157).

. . .

. . .

. . .

. . .

. . .

. . .

. . .

. . .

LV 419,640,351v3 1-17-12

1  This opposition is based upon the attached points and authorities, the Declaration of Mark G. Tratos,
2  Esq., the pleadings and papers on file herein, and any oral argument this Court may allow.
3      DATED this 17th day of January, 2012.

GREENBERG TRAURIG, LLP

/s/ Mark G. Tratos
Mark G. Tratos (Bar No. 1086)
Thomas F. Kummer (Bar No. 1200)
Laraine M. I. Burrell (Bar No. 8771)
3773 Howard Hughes Pkwy, Suite 400 North
Las Vegas, NV  89169
Counsel for Defendants
Floyd Mayweather, Jr. and
Mayweather Promotions, LLC

## I. INTRODUCTION

Like Plaintiff's original motion for default and dismissal, the instant renewed motion for fees is heavy on theatrics, but light on case law.  Plaintiff attempts to inflame the Court by rearguing his original motion, again exaggerating and misrepresenting Mr. Mayweather's behavior, hoping that rhetoric can take the place of precedent.  As an objective look at the relevant case law reveals, however, Plaintiff cannot support his claim for over $111,000 in attorneys' fees.  Such a number is an absurd request in light of (1) certain billing practices that are improper in this district; (2) comparable attorney rates in this district; (3) the number of hours expended in light of the work performed, (4) Defendant's repeated efforts to mitigate Plaintiff's injury, and (5) that it is the Plaintiff, Manny Pacquiao, who is repeatedly resisting having his deposition taken.  As such, this Court should award far less than the $111,000+ dollars requested.  Specifically, the Court should (1) reduce the amount claimed due to improper billing practices such as block billing and charging attorney time for non-attorney tasks; (2) reduce the hourly rates to those appropriate in this district, and (3) reduce the number of hours to a number of hours that would be reasonable for the tasks accomplished.

. . .

. . .

. . .

LV 419,640,351v3 1-17-12

## II. LEGAL ARGUMENT

### A. Pacquiao's Overall Requested Fees Should be Reduced Due to Certain Billing Practices

Pacquiao's overall requested fees should be reduced due to certain questionable billing practices that are deemed improper in this district. This Court's Order of December 20, 2011 stated that "[t]he local rule contemplates a thorough breakdown of time including identifying the individuals who provided the work, what was being worked on, and the amount of time spent on the particular item." *See* Order, at 2. Plaintiff has now attempted to comply with the "reasonable itemization" requirement by submitting a spreadsheet breaking down the time worked by attorney, number of hours, and total fee per task. *See* Exhibit A to Plaintiff's Renewed Motion for Fees (filed under seal). Although this is an improvement over no itemization at all, the spreadsheet reveals that certain entries and types of entries should not be permitted. As such, this Court should reduce the overall amount to account for these deficiencies.

#### *1. Vagueness and Block Billing*

An examination of the spreadsheet reveals that many entries are vague, such as "Draft motion for sanctions" which is virtually repeated for days on end, and many are "block billed" - lumping several distinct tasks together into one large entry for the day. For example, "Prepare Marroso Declaration in support of Motion for Sanctions; Revise motion for sanctions; Factual investigation re motion for sanctions" is one 7.7 hour entry with no further breakdown; "Prepare sanctions reply brief for filing; confer with D. Marroso regarding same" is a 4.4 hour entry with no further breakdown. *See Comcast of Ill. X, LLC v. Jung Kwak*, 2010 WL 3781768 (D.Nev. 2010) (imposing overall reduction of 15% because "block billing" of all tasks for the day in one time entry made it impossible for the court to determine how much time was spent on each task, and thus if that amount of time was reasonable.). Relatedly, courts in this district do not permit recovery for more than one attorney's time during meetings between attorneys. Thus, Mr. Marroso's entries of "revise reply brief" on the same days as his associate's entries of "confer with D. Marroso" may be duplicative. *See*, *e.g.*, *Incorp Services, Inc. v. Nevada Corporate Services, Inc.*, 2011 WL 3855462 (permitting recovery of time for meetings with other attorneys by attorney with highest rate only).

LV 419,640,351v3 1-17-12

Of course, it is difficult to tell here, as the block billing prevents accurate assessment as to these entries.

### 2. Non-Attorney Tasks

It is well-settled that parties may not recover attorneys' fees for tasks that are not attorney-specific. *See, e.g.*, *Cashman v. Colorado Cas. Ins. Co.*, 2011 WL2149606 (D. Nev. 2011) (refusing to order fees for tasks that did not involve the practice of law). Here, there are at least two types of entries that are problematic under this rule.

First, Plaintiff attempts to recover for filing-related tasks; recovery is not permitted. *See Comcast*, 2010 WL 3781768, *6 (rejecting time spent preparing for filing and filing). Examples include "prepare [reply brief and related papers] for filing," dated August 31, 2011, and "prepare sanctions reply brief for filing," dated September 1, 2011. Again, however, it is impossible to tell how much time should be removed because the relevant entries are block-billed.

Second, there is evidence in the motion and declaration that other non-attorney tasks were performed by attorneys. Specifically, Plaintiff's attorneys claim to have undertaken an "extensive factual investigation" in preparation for the Motion for Default and Dismissal, and appear to attempt to justify the exorbitant number of hours spent by pointing the Court toward this extra time. Pacquiao's motion states that "Pacquiao's attorneys" "monitored" Mr. Mayweather's social media sites, "searched blogs" for discussions of Mr. Mayweather's whereabouts, and "reviewed countless news sources" for reports of Mr. Mayweather's activities. *See* Motion, at 9-10. Although incorporating such a timeline into the motion for default/dismissal would be an attorney's task, the basic internet research and timeline is not. That type of task could easily be delegated to a paralegal or secretary, especially when the junior associate assigned to the matter <u>bills at almost five hundred dollars per hour</u>. To put it another way, answering the question of where a celebrity was on a particular date does not require knowledge of Westlaw, only knowledge of Google. As noted above, time spent on non-legal tasks such as these is not recoverable in this district.

Problematically, however, Plaintiff's spreadsheet does not break down the hours spent on such factual investigation; indeed, <u>only one part of one entry</u> mentions any factual investigation at all. *See* Exhibit A to Plaintiff's Renewed Motion for Fees (filed under seal). This could mean one

LV 419,640,351v3 1-17-12

of two things: either (1) Plaintiff has overstated the extent of the factual investigation in order to justify the exorbitant number of hours spent on a routine motion; or (2) the billing entries lack sufficient detail to ascertain how much time was spent on such investigation. Assuming it is the latter, the billing records don't adequately reflect this "significant" time. Because Plaintiff's spreadsheet does not indicate how much time was spent on these tasks, Defendant - and the Court - cannot properly ascertain how much time should be challenged.

Certain of Plaintiff's billing practices are inappropriate in this district. As such, Defendant respectfully requests that this Court reduce the overall amount awarded by a certain percentage, *see Comcast*, 2010 WL 3781768, and/or eliminate the deficient entries from the calculations.

## B. The Rates Requested by Counsel are Unreasonable in this District

It is well-settled in the Ninth Circuit that a reasonable hourly rate should reflect the prevailing market rates of attorneys practicing in the forum community. *See Switch Communications Group LLC v. Ballard*, 2011 WL 5041231 (D.Nev. 2011), *citing Webb v. Ada County*, 285 F.3d 829, 840, n. 6 (9th Cir. 2002). This reasonable hourly rate determination is not made by reference to rates actually charged to the prevailing party. *See SOC-SMG, Inc., v. Christian & Timbers,* LLC, 2010 WL 2085076 (D. Nev. 2010), *citing Welch v. Metropolitan Life Ins. Co.*, 480 F.3d 942, 946 (9th Cir. 2007). Indeed, Plaintiff acknowledges that the appropriate measure of reasonableness of a fee is whether the fee is comparable with rates in <u>this district</u>.[1] *See* Motion, at 4. "It is the burden of the fee applicant to produce satisfactory evidence, <u>in addition</u> to an affidavit from the fee applicant, demonstrating that the requested hourly rate reflects prevailing community rates for similar services." *See Comcast of Ill. X, LLC v. Jung Kwak*, 2010 WL 3781768 (D.Nev. 2010), *citing Jordan v. Multnomah County*, 815 F.2d 1258, 1263 (9th Cir. 1987).

A court may examine evidence provided by the parties, and also rely upon its own experience in the relevant legal market. *See GCM Air Group, LLC v. Chevron U.S.A., Inc.*, 2009 WL 1810743,

---

[1] There is an exception to this rule for certain situations where local counsel is effectively unavailable; however, Plaintiff does not contend that this exception applies here, and appears to agree that the relevant community in question is Las Vegas, Nevada. *See, e.g.*, *Gates v. Deukmejian*, 987 F.2d 1392, 1405 (9th Cir. 1992).

LV 419,640,351v3 1-17-12

*5 (D. Nev. 2009). A District Court may reduce the claimed hourly rate to a reasonable level. *See, e.g., Van Asdale v. IGT*, 2011 WL 2118637 (D. Nev. 2011) (reducing claimed rate of $450 per hour to reasonable rate of $350 per hour for experienced litigator in Reno, Nevada); *SOS-SMG*, 2010 WL 2085076 (reducing claimed rate of $400 per hour to reasonable rate of $300 per hour for experienced litigator in Reno, Nevada).

Here, there is simply no argument - and certainly no evidence - that the requested rates are reasonable within this district. Plaintiff has requested rates of $695 for Mr. Marroso, who graduated from law school in 2000, $495 for Mr. Whitman, who graduated from law school in 2008, and $415 for Mr. Mrkonic, who graduated from law school in 2009.[2] Although Plaintiff was able to find a few bankruptcy cases in which hourly rates in the five or six hundred dollar range have been reimbursed, Plaintiff fails to find a single non-bankruptcy case in this district reimbursing rates anywhere close to the requested rates. It is telling that even the cases cited by Plaintiff reveal that a reasonable rate in this district is $350-$400 for experienced litigators.[3]

For example, Plaintiff cites *Wheeler v. Coss*, a case in which the court awarded fees of $350/hr for the work of two attorneys practicing law since 1986 and 1993, respectively. *See* 2010 WL 2628667 (D. Nev. 2010).[4] Other recent decisions confirm that the rates requested by Plaintiff are exorbitant in this district, and specifically within the Las Vegas[5] legal community:

. . .

---

[2] Plaintiff did not provide Mr. Mrkonic's rate. It was calculated using the spreadsheet provided by Plaintiff.

[3] For associates, that number is lower: "An hourly fee ranging between $250–$350 an hour is reasonable for experienced associates in the Las Vegas legal market." *See Incorp Services, Inc. v. Nevada Corporate Services, Inc.*, 2011 WL 3855462 (D.Nev. 2011). Even assuming for the sake of argument that Mr. Whitman, who graduated from law school in 2008, and Mr. Mrkonic, who graduated in 2009, are "experienced" associates, their billing rates of $495/hr and $415/hr are flatly unreasonable in this district.

[4] Even in a case that Plaintiff later cited out of the Southern District of New York - undoubtedly a district with some of the highest rates in the country - the rates are much lower. For example, in *Auscape*, the highest rate sought, which was for a partner at Latham & Watkins admitted to the bar in 1984, was $495/hr. *See Auscape Int'l v. Nat'l Geographic Soc'y*, 2003 WL 21976400 (S.D.N.Y. 2003). At the time, that attorney had been practicing law for nineteen years - eight years longer than Mr. Marroso, and sixteen years longer than Mr. Whitman. Even assuming that her rate would be higher in 2011, it is a striking comparison.

[5] A review of the case law indicates that Reno, also within the District of Nevada, appears to have rates generally comparable to rates in Las Vegas. Nevertheless, this chart includes cases in Las Vegas only.

| Hourly Rate | Years of Experience (approx.) | Case Citation |
|---|---|---|
| $250 | 30 | *Cashman v. Colorado Cas. Ins. Co.*, 2011 WL2149606 (D. Nev. 2011) |
| $200-260<br>$295<br>$310<br>$350 | 4<br>5<br>6<br>8 | *Incorp Services, Inc. v. Nevada Corporate Services, Inc.*, 2011 WL 3855462 (D.Nev. 2011). |
| $325<br>$210 | 17<br>4 | *Switch Communications Group LLC v. Ballard*, 2011 WL 5041231 (D.Nev. 2011) |
| $295 | 19 | *Comcast of Ill. X, LLC v. Jung Kwak*, 2010 WL 3781768 (D.Nev. 2010) |

As seen above, rates in this district are typically much lower than those requested by O'Melveny & Myers here.

Plaintiff has argued that "the fact that other courts in other matters found rates in the $300 - $400 range reasonable does not make Pacquiao's request necessarily unreasonable." *See* Motion, at 5. However, courts in the District of Nevada have found similar rates unreasonable. In one telling case, attorneys from O'Melveny & Myers' Los Angeles office attempted to recover their full rates in Reno, Nevada. *See Van Asdale v. IGT*, 2010 WL 1490349 (D. Nev. 2010). The court held that a requested rate of $735/hr for an attorney with 30+ years of experience in labor and employment would be reduced to $500/hr, the requested rate of an attorney practicing labor and employment since 1998 would be reduced from $495/hr to $275/hr, the requested rate of an attorney practicing labor and employment since 2002 would be reduced from $410/hr to $250/hr, and the requested rate of an attorney practicing labor and employment since 2004 would be reduced from $340/hr to $250/hr. *Id*. at *9. As is evident, courts can and do reduce rates that are unreasonably high, such as the ones requested here.

LV 419,640,351v3 1-17-12

1   Although Plaintiff apparently attempted to avoid doing so in his first motion, Plaintiff has now offered the billing rates of local counsel.  Ms. Van Buren, a 2006 law school graduate, is billed out at $320 per hour.  Mr. Hone, a shareholder at Gordon Silver who graduated from law school in 1997, is billed at $475 per hour.  When Mr. Hone's rate is contrasted with Mr. Marroso's rate of $695 per hour, the difference is striking - over $200 more per hour.  Likewise, a comparison of Mr. Whitman's rate of $495 per hour with Ms. Van Buren's rate of $320 per hour - despite Ms. Van Buren's two additional years of experience - reveals that Mr. Whitman's rate is over $150 per hour higher.  Despite Mr. Hone having over <u>10 years more experience</u>, Mr. Whitman's rate is also higher than Mr. Hone's.

As a further check on the O'Melveny rates, Greenberg Traurig - a respected international law firm - examined its own rates for a Las Vegas associate graduating in 2008 and a shareholder graduating in 2000.  In the relevant timeframe (2011), Greenberg Traurig billed the associate's time at $260/hr, and the shareholder's time at $445/hr.  *See* Declaration of M. Tratos, attached hereto as **Exhibit A**.  The only litigation attorney's billing rate in the office that begins to approach Mr. Marroso's $695/hr is for an attorney <u>with thirty years of experience</u>.  *Id*.  These rates provide additional evidence that Pacquiao's claimed rates are excessive in this district.

As shown above, Plaintiff's rates of $695 and $495 per hour respectively simply are not reasonable in this district.[6]  As such, this Court should reduce these rates to rates appropriate in the Las Vegas legal community.

**C. The Number of Hours Claimed is Unreasonable.**

Per the Court's order of December 20, 2011, Pacquiao has now submitted a "reasonable itemization" of the fees, broken down by attorney, number of hours worked, and fee per task.  However, this "reasonable itemization" is anything but reasonable.  A close examination of the purported hours worked reveals what can only be characterized as serious inefficiencies.[7]  Pacquiao

---

[6] Mr. Mrkonic's rate of $415/hr is likewise not reasonable for the same reasons as those listed above.

[7] Other logical explanations, such as attorney incompetence or inflated billing practices, are not briefed here.  Defendant has no reason to believe that Plaintiff's attorneys are incompetent or dishonest.

LV 419,640,351v3 1-17-12

claims a total of 211 hours - the equivalent of more than five forty-hour weeks - were spent on activities contemplated by the Court's order. This is absurd on its face. Such a claim makes clear that (1) Mr. Pacquiao seeks to be reimbursed for matters not contemplated by this Court's order, and (2) Mr. Pacquiao's attorney team has spent an unreasonable amount of time on the matters within the Court's order. "District courts have the authority to make across-the-board percentage cuts either in the number of hours claimed or in the final lodestar figure to adjust fee awards." *Ballard*, 2011 WL 5041231, *2, *quoting Gates v. Deukmejian*, 987 F.2d 1392, 1399 (9th Cir.1992) (internal quotations omitted). Mr. Mayweather respectfully requests that the Court make reductions as outlined below.

### 1. Plaintiffs' Hour and Fee Requests are Overbroad, Encompassing Far More Than the Court Intended

This Court's order provides that "[n]otwithstanding [the denial of case-dispositive sanctions], monetary sanctions related to the cost of the deposition, as well as attorney's fees relating to that deposition and the present motion are appropriate…" *See* Order, Doc. No. 143, at 3. At face value, that language appears to contemplate (i) the cost of the deposition, (ii) the attorneys' fees relating to the deposition, and (iii) the attorneys' fees relating to the motion for case-terminating sanctions.

Bizarrely, Pacquiao does not request the very fees that appear to be contemplated by the order - such as fees of local counsel in attending the missed deposition, or fees associated with preparation for the missed deposition - but instead requests fees completely outside the scope of the order. While Pacquiao claims that the exclusion of deposition preparation fees and fees of local counsel are just an effort to be "conservative," Pacquiao's true motivations are obvious. If Pacquiao were to reveal the limited number of hours - if any - spent in preparation for a deposition that counsel had been warned well in advance would not take place, the lack of prejudice would be obvious.

Instead, Pacquiao brushes aside this Court's instructions and creates his own interpretation of "relating," allowing him to include opposing the motion for protective order and the emergency appeal following the denial of the motion for protective order. This permits Pacquiao to seek an additional $14,460.50 in fees. However, inclusion of such fees is unjustified. These fees were not requested nor awarded pursuant to Rule 37(a)(5) following the denial of the motion and the appeal,

and should not be awarded now. If the Court does choose to award them, however, the Court should take into account the factors addressed in this motion, such as the excessive rates for this district, vagueness in entries, and any excessive hours that the Court deems unreasonable for the tasks.

**2. Nearly One Hundred Sixty Hours Spent on the Fifteen Page Motion for Sanctions and Related Papers is Unreasonable.**

The nearly one hundred and sixty hours purportedly spent on the fifteen page motion for sanctions and related papers is incredible. Pacquiao argues that such an incredible number is "more than reasonable" given the length of time, amount of work and work product and results achieved for Pacquiao.[8] *See* Motion at 12. This assertion is truly unbelievable and may border on bad faith.

Although there is "not a formula to determine the appropriate number of hours spent per page to draft a pleading or motion," at least one court in this district has applied the one-hour-per-page rule as a check on reasonableness. There, the Court found that 33.7 hours was reasonable for the "research, drafting, discussing, and editing" a 33 page opposition with a sixty-six (66) page declaration, and attachments. *See Grimsley v. Charles River Laboratories*, 2010 WL 4539383 (D.Nev. 2010). Likewise, in *Ballard*, the court was appalled by a claim of 44.6 hours between two attorneys on a twenty-page motion to compel (exclusive of the reply), calling the time records "excessive and inflated." *See* 2011 WL 5041231, *2-3. Although the attorneys requested over ten thousand dollars for the motion to compel and over three thousand dollars on the reply, the court found this unreasonable and reduced the claimed fees by around 85%, awarding two thousand dollars instead. *Id*.

Here, on fees related to the Motion itself (not the reply, objections to declaration, or opposition to motion to strike), Pacquiao's attorneys billed 67.1 hours. This includes 55.4 hours of Mr. Whitman's time, 4.5 hours of Mr. Mrkonic's time, and 7.2 hours of Mr. Marroso's time. The motion was 15 pages long. Even <u>quadrupling</u> the above-stated "one hour per page" rule, to account

---

[8] It is also beyond belief that Pacquiao apparently spent 20% <u>more</u> time than the nearly 160 hours claimed related to the underlying motion. *See* Motion, at 12.

for the "extensive factual investigation" Pacquiao claims to have conducted,[9] Pacquiao comes nowhere close to a reasonable number of hours.

Worse, for Pacquiao's reply and related papers - which presumably would not require any additional factual investigation and little additional legal research - Pacquiao's attorneys billed 67 hours. Most of this time was Mr. Mrkonic's, a total of over 61 hours. To put this claim in perspective, if Mr. Mrkonic arrived at work at 8 a.m., immediately began working on the reply, and did not look up from his computer until 6 p.m., he would have had to have done this for <u>six days straight</u> to bill that many hours. And he'd still have work left to do. Put another way, Mr. Mrkonic's work on the reply cost the client over $25,000.00. Mr. Marroso, whose time entries are limited to first outlining and then revising the reply, billed more than five hours on the reply. At first blush, "only" five hours appears reasonable next to the 61 hours of associate time, but even five hours of shareholder time spent on reviewing and revising a reply is truly excessive.[10]

These numbers are especially egregious where the motion for sanctions was - or should have been - extremely straightforward. *See Ballard*, 2011 WL 5041231, * 2-3 (spending $14,000 to draft the papers "in a rather routine discovery dispute" was "excessive" and "unreasonable" and reducing the award to $2,000). The issues in the instant matter were neither novel nor difficult. Federal Rule of Civil Procedure 37(b) governs sanctions for failure to obey a court order during discovery. Researching applicable case law on a well-known federal rule and applying the law to the facts of the case is not complicated. Indeed, there are a number of cases within the Ninth Circuit that apply Rule 37(b) to the failure to attend a deposition.

In one procedurally similar case, a plaintiff moved for default judgment after the defendants failed to comply with discovery orders. *See Incorp Services, Inc. v. Nevada Corporate Services, Inc.*, 2011 WL 3855462, *1. The Court denied the motion for default judgment, instead opting to consider attorneys' fees and an adverse jury instruction. *Id.* The plaintiff moved for attorneys' fees,

---

[9] Moreover, as noted above, this "extensive factual investigation" likely could have been completed by a paralegal or a (more) junior associate with lower rates. *See, e.g.*, *Cashman v. Colorado Cas. Ins. Co.*, 2011 WL2149606 (D. Nev. 2011) (refusing to order fees for tasks that did not involve the practice of law).

[10] Mr. Whitman also spent 22.2 hours opposing Mr. Mayweather's motion to strike the objections to the declaration of M. Tratos. This was a short, straightforward document as well.

LV 419,640,351v3 1-17-12

claiming 43 hours of attorney time for "meet and confer efforts, drafting the motion for sanctions and default, and preparation for and appearance at the June 9 hearing on the motion for sanctions and default." *Id*. at *2. However, the Court <u>reduced this claimed amount to 33 hours</u> and awarded $9,202.17 in fees and costs. *See Incorp Services, Inc. v. Nevada Corporate Services, Inc.*, 2011 WL 3855462, *2. In contrast, for very similar tasks - although in the instant case there was no hearing to prepare for and attend - here Plaintiff has claimed 159.6 hours (more than five times as many as in *Incorp*) for factual and legal research and drafting the motion and related papers. *See* Motion, at 10.

Similarly, in *Thompson v. American Family Mut. Ins. Co.*, the attorneys requested $37,112.29 as compensation for $143.3 hours of attorney time related to a discovery dispute. *See* 2011 WL 3651367, *1 (D. Nev. 2011). The court found the amount sought to be excessive, including 36.7 hours on certain motions to compel, and reduced the $37,000+ request to $7,500. *Id*. at 2.

Additionally, the claims of intense research are belied by Plaintiff's motion. The motion contains a mere <u>six pages of legal argument</u>, and makes only passing reference to the Ninth Circuit standard, spending about two pages discussing the five factors courts consider in making a determination as to the appropriateness of case-dispositive sanctions. Had Pacquiao actually completed significant research into the issue, Pacquiao would have likely determined that there was absolutely no precedent for the sanctions sought. Indeed, this Court <u>denied</u> Pacquiao's motion for case-dispositive sanctions, citing a lack of prejudice to Plaintiff. As such, this Court should drastically reduce Plaintiff's claim of 159.6 hours for the research and drafting of the motion and related papers.

**3. The 27 Hours Spent on the Motion for Attorneys' Fees is Excessive**

Plaintiff claims twenty seven (27) hours in preparing and filing his motion for attorneys' fees. Although this number is not so egregiously excessive as the above numbers, it is still unreasonable.

First, at least one entry appears to be erroneously included. Mr. Whitman's entry of "coordinate preparation of production" appears to refer to production of documents and not something to do with the motion for attorney's fees. Second, certain entries appear excessive. For

LV 419,640,351v3 1-17-12

example, while Mr. Whitman spent 7.4 hours on the reply in support of the motion, Mr. Marroso - whose billing rate is $200 higher than Mr. Whitman's - also spent 6.1 hours on the reply. Considering the reply was extremely straightforward, and mostly a shortened recitation - often verbatim - of the original motion, this is excessive. This is especially so given that Plaintiff's counsel billed more time on the reply than on the original motion. In awarding fees incurred in drafting a motion for attorneys' fees, Defendant respectfully requests that the Court also take into account the factors addressed in this motion, such as the excessive rates for this district, vagueness in entries, and any excessive hours that the Court deems unreasonable for the tasks.

**D. Plaintiff Could Have Avoided Most of the Fees By Showing Professional Courtesy**

Finally, it should not be overlooked that Plaintiff could have avoided much of this with a little professional courtesy. By simply conferring with Defendant's counsel prior to setting the deposition, or by agreeing to the reasonable rescheduling of the deposition, nearly all of the fees potentially could have been avoided.

Immediately following the unilateral setting of the deposition, counsel for Defendant informed counsel for Plaintiff that Defendant Mayweather Jr. would not be available until after the September 17th fight, as counsel's schedule and Mr. Mayweather's training camp made a date prior to the fight impossible. Plaintiff continued to offer dates prior to the fight, and inexplicably refused to consider dates following the fight (despite months remaining before the close of discovery). Plaintiff was informed that Defendant could not and would not appear on June 17th, yet went forward with the deposition.

After Mr. Mayweather failed to appear for his deposition, Pacquiao again refused to discuss dates following the September 17th boxing match, despite repeated requests from Defendant's counsel for an explanation regarding the urgency of the deposition. Defendant's counsel <u>even offered to pay</u> certain of Plaintiff's attorneys' fees and costs associated with the missed deposition and the future deposition, and offered to stipulate to an extension in discovery to make up for the delay. Plaintiff could have elected to accept that offer.

Instead, Plaintiff elected to spend 159.6 hours of time and $76,866 of client money to file a motion for default and dismissal. Plaintiff did so despite the knowledge that given the facts of the

LV 419,640,351v3 1-17-12

case - specifically the lack of prejudice to Plaintiff and the fact that this was Mr. Mayweather's only discovery misstep in the case thus far - the Ninth Circuit case law was unfavorable to his position.

Meanwhile, on September 15, counsel for Mr. Mayweather re-offered Mr. Mayweather for deposition on September 23 and other dates in September and October. Reinforcing the lack of prejudice to Mr. Pacquiao from any delay, counsel for Pacquiao declined immediately. The motion for default and dismissal was denied on October 18, and the deposition was accomplished on November 10. Plaintiff's counsel deposed Mr. Mayweather for almost seven (7) hours. Mr. Mayweather answered the questions asked of him and was never instructed not to answer any question posed by Plaintiff's counsel.

In light of the above, it is clear that Mr. Pacquiao could have avoided much of the time and resources expended by simply extending professional courtesy. As such, Defendant respectfully requests that this Court take into account Mr. Mayweather's good faith efforts to cooperate with Mr. Pacquiao in setting a date convenient for all parties when making the award of attorneys' fees.

**E. Mr. Mayweather's Deposition has Been Completed, but Mr. Pacquiao's Deposition is Causing Delay.**

Despite all of Pacquiao's bluster and righteous indignation regarding Mr. Mayweather's deposition, it is now the setting of Pacquiao's deposition that has ultimately caused delay in this lawsuit. Discovery is now weeks from completion and Mr. Pacquiao has repeatedly refused to appear. His deposition has been set, reset, reset again for a Sunday at Mr. Pacquiao's insistence, and now vacated yet again pending additional dates. For this reason and others, defendants Mr. Mayweather and Mayweather Promotions filed a motion to extend discovery on January 11, 2011. The parties are continuing to confer regarding a stipulation to extend discovery. *See* Declaration of M. Tratos, attached hereto as **Exhibit A**.

. . .

. . .

. . .

. . .

. . .

LV 419,640,351v3 1-17-12

### III. CONCLUSION

In light of the foregoing, Mr. Mayweather respectfully requests that the Court take into account the excessive rates for this district, the excessive number of hours billed, and the other aforementioned problems with certain billing entries, and reduce the claimed rates and hours accordingly.

Dated this 17th day of January, 2012

GREENBERG TRAURIG, LLP

/s/ Mark G. Tratos
Mark G. Tratos (Bar No. 1086)
Thomas F. Kummer (Bar No. 1200)
Laraine M.I. Burrell (Bar No. 8771)
3773 Howard Hughes Pkwy, Suite 400 North
Las Vegas, NV  89169

Counsel for Defendants
Floyd Mayweather, Jr. and
Mayweather Promotions LLC

LV 419,640,351v3 1-17-12

**CERTIFICATE OF SERVICE**

Pursuant to Fed. R. Civ. P. 5(b), I hereby certify that on January 17, 2012, service of the foregoing **DEFENDANT FLOYD MAYWEATHER, JR.'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR ATTORNEYS' FEES** was made this date through the Court's CM/ECF electronic filing system to:

Daniel Petrocelli
dpetrocelli@omm.com

David Marroso
Dmarroso@omm.com

Franchesca V. Van Buren
fvanburen@gordonsilver.com

Eric D. Hone
ehone@gordonsilver.com

Malcolm P. LaVergne
mlavergne@lavergnelaw.com

/s/ Cynthia L. Ney
An employee of Greenburg Traurig

LV 419,640,351v3 1-17-12

# EXHIBIT A

Mark G. Tratos (Bar No. 1086)
tratosm@gtlaw.com
Thomas F. Kummer (Bar No. 1200)
kummert@gtlaw.com
Laraine M. I. Burrell (Bar No. 8771)
burrelll@gtlaw.com
GREENBERG TRAURIG, LLP
3773 Howard Hughes Parkway
Suite 400 North
Las Vegas, Nevada 89169
Telephone: (702) 792-3773
Facsimile: (702) 792-9002
*Counsel for Defendants Floyd
Mayweather Jr. and Mayweather Promotions*

UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

| | |
|---|---|
| EMMANUEL PACQUIAO,<br><br>Plaintiff,<br><br>v.<br><br>FLOYD MAYWEATHER, JR., et al.,<br><br>Defendants. | **Case No.: 2:09-CV-02448-LRH-RJJ**<br><br>**DECLARATION OF MARK TRATOS IN SUPPORT OF DEFENDANT FLOYD MAYWEATHER, JR.'S OPPOSITION TO PLAINTIFF'S RENEWED MOTION FOR ATTORNEYS' FEES** |

I, Mark G. Tratos, declare under the penalty of perjury under the laws of the United States that the facts contained herein are of my personal knowledge, and if called upon, I could and would competently testify to them.

1. I am an attorney duly licensed to practice law in the States of Nevada and California.

2. I am the co-managing shareholder of the Las Vegas office of Greenberg Traurig. As such, I have knowledge of the billing rates of my fellow shareholders and my associates.

3. My office currently employs an associate in the litigation group who graduated from law school in 2008. That attorney's time is billed at $260/hour.

4. An attorney who graduated from law school in 2000 is a shareholder in the litigation group at my office. That attorney's time is billed at $445/hr.

5. My office bills the time of one of the litigation shareholders at close to $695/hr. However,

1

this shareholder has been practicing law for over thirty years.

6. Floyd Mayweather was deposed on November 10, 2011 and during the course of his deposition, answered the questions posted by the Plaintiff's counsel and was never instructed not to answer any question.

7. Mr. Pacquiao's deposition has been set (Nov. 22, 2011), reset (Jan. 11, 2012), and reset again for a Sunday at Mr. Pacquiao's insistence (Jan. 8, 2012), despite personal inconvenience to all Defendants' counsel. Each time, Mr. Pacquiao has insisted that the date be vacated. I have repeatedly attempted to get a date certain for this deposition, but have been thus far unsuccessful. This, among other reasons, has prompted Mr. Mayweather Jr. and Mayweather Promotions to move for an extension of the discovery period and related deadlines. The parties continue to confer regarding a possible stipulation for extension of the discovery period as well.

Executed this 17th day of January, 2012 at Las Vegas, Nevada.

*/s/ Mark G. Tratos*
Mark G. Tratos