1  DANIEL M. PETROCELLI (Cal S.B. #97802)
   (admitted *pro hac vice*)
2  dpetrocelli@omm.com
   DAVID MARROSO (Cal. S.B. #211655)
3  (admitted *pro hac vice*)
   dmarroso@omm.com
4  O'MELVENY & MYERS LLP
   1999 Avenue of the Stars, 7th Floor
5  Los Angeles, CA 90067-6035
   Telephone:    (310) 553-6700
6  Facsimile:    (310) 246-6779

7  ERIC D. HONE
   Nevada Bar No. 8449
8  ehone@gordonsilver.com
   FRANCHESCA V. VAN BUREN
9  Nevada Bar No. 10260
   fvanburen@gordonsilver.com
10 GORDON SILVER
   3960 Howard Hughes Pkwy., 9th Floor
11 Las Vegas, Nevada 89169
   Tel: (702) 796-5555
12 Fax: (702) 369-2666

13 Attorneys for Plaintiff and Counter-Defendant
   Emmanuel "Manny" Pacquiao

14

15                UNITED STATES DISTRICT COURT

16                     DISTRICT OF NEVADA

17

18 EMMANUEL PACQUIAO, a Philippines
   resident,
19                                          CASE NO. 2:09-cv-02448 LRH-RJJ
                  Plaintiff,
20                                          **PLAINTIFF/COUNTER-DEFENDANT
   vs.                                      EMMANUEL PACQUIAO'S
21                                          OPPOSITION TO EMERGENCY
   FLOYD MAYWEATHER, JR., a Nevada          MOTION TO COMPEL DISCOVERY
22 resident; FLOYD MAYWEATHER, SR., a       AND FOR SANCTIONS**
   Michigan resident; ROGER MAYWEATHER, a
   Nevada resident;                         **ORAL ARGUMENT REQUESTED**
23 MAYWEATHER PROMOTIONS LLC, a
   Nevada limited liability company,
24
                  Defendants.
25

26        Plaintiff/Counter-Defendant Emmanuel Pacquiao ("Pacquiao"), by and through his

27 counsel, hereby opposes Defendants Floyd Mayweather, Jr. and Mayweather Promotions, LLC's

28 Emergency Motion to Compel Discovery and For Sanctions (the "Motion"). This Opposition is

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102852-001/                    1 of 17

made and based upon the following memorandum of points and authorities and any attachments thereto, the papers and pleadings already on file herein, and any oral argument the Court may choose to entertain.

**MEMORANDUM OF POINTS AND AUTHORITIES**

**I.    INTRODUCTION**

Manny Pacquiao sued Floyd Mayweather Jr. and others for falsely stating that Pacquiao used performance-enhancing drugs.  During the course of discovery, Mayweather requested and Pacquiao produced all performance-enhancing drug test results in his possession and facilitated the production of additional drug test results from third parties.

In the face of <u>uncontroverted</u> evidence that Pacquiao passed every test, and with no legitimate excuse for his conduct, Mayweather asks the Court to approve an unbridled fishing expedition through Pacquiao's entire private medical history.  Mayweather's contention to the Court that he is only interested in a narrow class of information tailored to the symptoms of steroid use is false.  Mayweather's laundry list of symptoms includes such everyday maladies as high blood pressure, certain forms of cancer, acne and other medical conditions.  Worse, Mayweather has no basis to suggest the intrusive and broad-sweeping medical discovery is remotely relevant to the issues in this case—as discussed below, the information neither informs the truth of Mayweather's statements nor is relevant to his actual malice.

Despite receiving all of Pacquiao's relevant medical information, Mayweather filed an emergency motion on January 4, 2012, inaccurately suggesting that Pacquiao has delayed and obfuscated discovery and asking the Court to compel: (i) production of "any and all medical records of Plaintiff from the year 2003 to the present"; (ii) compel further response to an interrogatory that Pacquiao answered to the best of his ability, yet Mayweather concluded was incomplete; and (iii) compel Pacquiao to execute an overbroad medical release giving Mayweather access to all of Pacquiao's medical records from any source without first allowing Pacquiao an opportunity to review, designate and redact irrelevant private information.  As demonstrated below, there is no basis for any of the requested relief as Pacquiao has completely and adequately responded to Mayweather's discovery.

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102852-001/

2 of 17

## II.     FACTUAL BACKGROUND

### Pacquiao Sues Mayweather — Mayweather Files a Counterclaim

On December 30, 2009, Pacquiao filed a complaint for defamation against Floyd Mayweather Jr. and others for falsely accusing Pacquiao of using performance-enhancing drugs. (Dkt. No. 1). Being sued only emboldened Mayweather Jr. and the other defendants who continued to level false public statements about Pacquiao.  Pacquiao filed a First Amended Complaint on March 17, 2010 and filed a motion for leave to file a Supplemental First Amended Complaint on October 31, 2011, to include the defendants' more recent defamatory remarks. (Dkt. Nos. 13 ¶¶ 41-42; 145-1 ¶¶ 43-47.)

On July 2, 2010, Floyd Mayweather Jr. filed his Answer to the First Amended Complaint. In addition to the Answer, Mayweather filed a Counterclaim against Pacquiao for defamation for allegedly accusing Mayweather "of using steroids."  (Dkt. No. 80 at 11.)

### Discovery Commences

On June 2, 2011, the Court issued the Scheduling Order setting the discovery cutoff for January 31, 2012. (Dkt. No. 119.)  None of the parties objected to this date or asked the Court for more time.   On June 22, 2011, Defendant Floyd Mayweather Jr. served his First Set of Interrogatories.   Interrogatory No. 15 asked Pacquiao to provide "the name and contact information of each doctor or other medical professional you have been treated by in the past ten years." (Mot., Ex. G)  On July 25, 2011, Pacquiao responded that the request was, among other things, "overbroad and oppressive" and sought information "neither relevant to any material issue in the case nor reasonably calculated to the discovery of admissible evidence."  Pacquiao also said he would supplement this response as discovery continued. (Whitman Decl., Ex. 1.)

On July 27, 2011, Defendants Floyd Mayweather Jr. and Mayweather Promotions served their Third Set of Requests for Production of Documents to Plaintiff.  (Mot., Ex. C) The requests at issue—Requests 1 through 5—sought "any and all" of Pacquiao's "medical records from 2003," and all documents related to physical examinations undergone by  Pacquiao since 2003.

On August 29, 2011, Pacquiao objected to Requests 1 through 5 as overbroad, unduly burdensome, not reasonably limited in scope or time, and because the materials sought were

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102852-001/

1    protected by the doctor-patient privilege (among other objections).  Pacquiao further responded

2    that he "will discuss with Defendants producing copies of <u>the results of any tests for the use of</u>

3    <u>performance-enhancing drugs from 2003 to the present</u>, if any, in his possession, custody or

4    control if/when the parties agree to and the Court enters an appropriate protective order."

5    (emphasis added) (Mot., Ex. F.)

6         From Pacquiao's first response in August, he made absolutely clear that the requests were

7    objectionable on a number of grounds and he would produce "tests for the use of performance-

8    enhancing drugs from 2003 to the present."  Mayweather did not challenge this response, ask for

9    a meet and confer, or move to compel.

10   ***A Protective Order Becomes Necessary — Pacquiao offers to Draft***

11        As soon as it became clear that a protective order would be necessary in the case,

12   Pacquiao offered to prepare a first draft for all parties to review.  To this end, on September 13,

13   2011, Pacquiao circulated a proposed Protective Order. (Mot. Ex. L.)

14   ***Mayweather Takes 5 Weeks to Review the Proposed Protective Order***

15        Mayweather did not respond for almost five weeks, and finally provided a red-line of the

16   proposed protective order on October 19, 2011. (Whitman Decl., Ex. 2.) Pacquiao's counsel

17   quickly reviewed the proposed changes and, on October 24, 2011, notified all counsel that

18   Mayweather's changes were acceptable, and the document would be ready to file once

19   Mayweather Sr. approved.  (Mot., Ex. M.)  Mayweather Sr. approved the Protective Order on

20   November 9, 2011, Pacquiao filed the proposed order three business days later, and the Court

21   entered the Protective Order on November 16.  (Dkt. Nos. 146, 148.)

22   ***Pacquiao Produces All Relevant Medical Records***

23        Following entry of the Protective Order, Pacquiao produced the requested promotional

24   agreements, bout contracts, endorsement deals, and drug test results performed by various state

25   athletic commissions. (Whitman Decl., Ex. 4.)

26        Pacquiao's production included results from ten different drug tests conducted by state

27   athletic commissions screening for banned substances.  (Whitman Decl., ¶ 3.) The testing records

28   spanned the period 2006 through 2011, and included tests administered at the direction of the

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102852-001/

4 of 17

1   Nevada Athletic Commission and the Texas Department of Licensing.  (*Id.*)  Pacquiao tested

2   negative for every single banned substance on every single test.

3          Pacquiao's production of all drug test results in his possession was entirely consistent

4   with his responses and objections to Mayweather's Third Request for Production of Documents

5   that Pacquiao served four months before—responses Mayweather never challenged.

6   ***Pacquiao Responds to Mayweather's Interrogatory***

7          Following entry of the Protective Order, Pacquiao also supplemented his responses to

8   Mayweather's Interrogatory No. 15, and provided the names and contact information for the two

9   doctors he could identify who have treated him.  Pacquiao also stated there were other doctors

10  assigned by athletic commissions who had examined him over the past ten years, but Pacquiao

11  did not know their names or contact information.  (Mot., Ex. I.)

12  ***Mayweather Demands Additional Irrelevant and Private Information***

13         On December 6, 2011, counsel for Mayweather complained that he still had not received

14  all of Pacquiao's medical records. (Mot., Ex. R.)  In response, on December 9, 2011, counsel for

15  Pacquiao noted that they were "confused by Mayweather's statement that Pacquiao has not

16  responded to discovery requests seeking medical" and other records, and asked Mayweather to

17  "please identify the specific request and describe the documents you believe exist but have not

18  been produced."  (Mot., Ex. S.)

19         On December 12, 2011, Mayweather again accused Pacquiao of failing to produce all

20  relevant medical records.  First, Mayweather pointed to public reports that Pacquiao had "a

21  laceration over his left eye in 2011, a right ear hematoma in 2009, and in need of a CT scan of

22  the head in 2005" and  complained that "no records of these examinations and/or treatments have

23  been produced."  (Mot., Ex. T.) Next, Mayweather alleged that Pacquiao only produced drug

24  tests from 2010 and 2011 and produced no test results from Texas—both accusations were

25  demonstrably false. Finally, Mayweather attached a blanket medical release that he demanded

26  Pacquiao execute.  (*Id.*)

27         To clear up any confusion, Pacquiao responded the very next day, on December 13, 2011,

28  disagreeing with Mayweather's characterization that all medical records are "relevant to the

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102852-001/

1    claims and defenses in this litigation." (Mot., Ex. U.)  Pacquiao explained that the examples

2    given by Mayweather in his December 12, 2011 correspondence—documents related to

3    lacerations, ear hematomas, and CT scans—have no conceivable relevance to the allegations and

4    claims in the case, which involve performance-enhancing drug use.  Pacquiao also corrected the

5    record regarding the produced drug test results:   "There is no merit to Mr. Mayweather's

6    contentions that Mr. Pacquiao only produced 'medical reports from the years 2010 and 2011'

7    and has not produced 'documents from the Texas Athletic Commission.' Documents EP000579-

8    000609 reflect test records from 2006 through 2009 and EP000610-612 contain the results of a

9    performance-enhancing drug test preformed by the Texas Athletic Commission."  (*Id.*)

10   ***The Parties Meet and Confer***

11          On December 21, 2011, the parties held a telephonic meet and confer to discuss various

12   outstanding discovery issues.  One of the issues raised during the call was the respective parties'

13   production of medical information.  Counsel for Pacquiao noted that Mayweather had not

14   produced specific medical records requested by Pacquiao in light of Mayweather's cross-

15   complaint.  Counsel for Mayweather indicated that those records were not in Mayweather's

16   control and that Pacquiao would need to subpoena the records directly from the health care

17   provider.  Pacquiao agreed to that process, and the parties agreed that the respective litigants

18   would subpoena records directly from third parties.  (Whitman Decl., ¶¶ 7-8.)

19          When counsel for Mayweather asked if Pacquiao intended to produce "all medical

20   records," counsel for Pacquiao responded:  (1) given the parties' understanding that the parties

21   would request additional medical information from third parties, Pacquiao had already produced

22   all medical records in his possession; and (2) a request for "all medical records" was overbroad

23   and unduly burdensome, among other things.  Pacquiao asked if Mayweather was prepared to

24   refine the request.  Counsel for Mayweather refused to narrow the request.

25          On December 27, 2011, the parties held a second meet and confer.  During this second

26   conference, counsel for Mayweather Jr. took the position that Pacquiao had not identified any

27   doctors.  Counsel for Pacquiao pointed to Pacquiao's response to Interrogatory No. 15 which

28   identified ███████  and provided contact information, ███████  and provided contact

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102852-001/

1    information, and mentioned █████████████████████████████ (*Id.*

2    ¶¶ 11-12.)  He also declined Mayweather's invitation to sign the overbroad medical release.

3    ***Mayweather Seeks Medical Records from Third Parties***

4         Prior to the meet and confer, Mayweather had already commenced the process of

5    collecting medical information about Pacquiao from third parties.  On December 15, 2011,

6    Mayweather issued a subpoena *duces tecum* to the Nevada State Athletic Commission (the

7    "Commission"), seeking Pacquiao's medical records.  (Mot., Ex. JJ.)  On December 16, 2011,

8    Mayweather issued a subpoena *duces tecum* to the Texas Department of Licensing and

9    Regulation (the "Texas Department"), seeking Pacquiao's medical records.  (Mot., Ex. W.) And

10   on December 22, 2011, Mayweather served a deposition subpoena *duces tecum* seeking medical

11   records related to Pacquiao from ██████████ one of the doctors Pacquiao had identified in

12   his answer to Interrogatory 15.  (Mot., Ex. KK.)

13        While Pacquiao was not willing to sign a broad medical release and he believed

14   Mayweather's overbroad requests to these third parties were not relevant to the issues in this

15   case, Pacquiao offered to collect the responsive materials from the third parties, review the

16   documents, and produce responsive, non-privileged information to Mayweather in order to

17   expedite discovery and avoid delay of trial due to discovery disputes.   (Mot., Ex. Z.)

18   Mayweather appeared to agree to this process.  (Mot., Ex. LL.) [1]

19        On January 4, 2012, Pacquiao produced all the records provided to him by the Texas

20   Department of Licensing, including additional drug test results, physical examination reports,

21   and other medical records.[2]  (Whitman Decl, Ex. 6.) On January 6, 2012, Mayweather obtained

22   Pacquiao's file from the Nevada Athletic Commission which included additional drug test

---

23   [1] Mayweather misrepresents Pacquiao's production of materials from the Texas Department of
24   Licensing.  Mayweather claims that Pacquiao said he "could not complete [his] review of and
     produce the mere twenty-four pages of documents [he] received from TDRL until January 20,
25   2012."  (Mot. at 15-16.)  This is simply not true, Pacquiao's December 30 letter to Mayweather
     made clear, "we will review these materials and produce responsive, non-privilege information"
26   and "expect to be able to do so with respect to TDL documents next week."  True to his
     statement, Pacquiao produced the materials from Texas on January 4, 2012.

27   [2] The suggestion that Pacquiao redacted probative medical information from the Texas records is
     baseless. (Tratos Decl. ¶ 11.) Pacquiao only redacted irrelevant personal information, such as
28   Social Security number or identification numbers.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102852-001/

results, physical examination reports, and other medical records. (Whitman Decl, Ex. 8). And on January 9, 2012, Mayweather received all ███████ medical documents related to Pacquiao. (Whitman Decl, Ex. 9.)

Despite access to all relevant medical records, Pacquiao's clear statement that he did not have additional documents or information, and Pacquiao's cooperation in obtaining medical information from third parties, Mayweather filed this Emergency Motion to Compel Discovery and for Sanctions (Dkt. No. 161.)

***Mayweather's Indifference To Protecting Confidential Information Despite Protective Order***

Mayweather has demonstrated a lack of care or indifference regarding his handling of confidential information produced by Pacquiao. the present motion is an example.  In his moving papers, Mayweather included an exhibit (Exhibit I) that Pacquiao marked "Confidential" pursuant to the Court's Protective Order.  Despite the designation, Mayweather publicly filed the document—not under seal.  Though Mayweather re-filed the Motion, and removed the exhibit from that filing (Dkt. No. 162.), the re-filing did not correct the problem as Exhibit I remained on the docket.  On January 6, Pacquiao informed Mayweather that Exhibit I was still publicly accessible on the Court's ECF system and asked that it be removed.  (Whitman Decl, Ex.7)  Nevertheless, Docket 161 containing Exhibit I, is still publicly accessible.  It is simply unfair to ask Pacquiao to entrust his confidential medical records, having no relevance to this case, to Mayweather's indifferent care and treatment.

## III.   LEGAL ARGUMENT

Mayweather is not entitled to any of the relief requested in his motion to compel.

### A.   Mayweather is Not Entitled to Explore All of Pacquiao Medical Records.

#### 1.   Mayweather's Burdensome Requests Seek Irrelevant Private Information.

Federal Rule of Civil Procedure 26 permits discovery of any matter "*not privileged*, which is *relevant* to the subject matter involved in the pending action" and which is "reasonably calculated to lead to the discovery of admissible evidence." Fed. R. Civ. P. 26(b) (emphasis added).  Mayweather argues that Pacquiao placed his private medical history at issue in this

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102852-001/

1    lawsuit by alleging in his complaint that "defendants issued [their] statements with actual

2    knowledge that such statements were false and in reckless disregard for their falsity" given

3    "Pacquiao's spotless records with drug tests over the course of his 15-year career <u>and the</u>

4    <u>absence of any other evidence suggesting his use of performance-enhancing drugs</u>."  (Dkt. No.

5    13 ¶ 52.)  Mayweather contends that the emphasized portion of this allegation somehow entitles

6    him to explore all of Pacquiao's private medical records in an effort to locate anything arguably

7    "suggesting" steroid use.

8           This argument, however, makes no sense.  The test for actual malice is defined by

9    Nevada law which provides that Pacquiao's allegation that Mayweather acted with actual malice

10   involves an assessment of what Mayweather knew and did not know at the time he made the

11   defamatory statements.  *See, e.g.*, *Nevada Indep. Broadcasting Corp. v. Allen*, 99 Nev. 404, 414,

12   664 P.2d 337, 344 (Nev. 1983) ("actual malice focuses largely on the defendant's belief

13   regarding truthfulness").  Even if Mayweather's attorneys discovered in 2012 that Pacquiao's

14   *private* medical records suggest he has "experienced acne," "high blood pressure," or some other

15   purported symptom of performance-enhancing drug use, that is in no way relevant to whether

16   Mayweather believed in the truthfulness of his defamatory statements in 2009-2011—when he

17   had no knowledge of any information his attorneys might discover.  Only information that

18   Mayweather was actually aware of at the time would be relevant to this assessment.

19          Moreover, Mayweather's suggestion that evidence of 21 random medical symptoms

20   would potentially inform the truth of Mayweather's statement is completely unfounded

21   medically and presents no basis for a fishing expedition into "all" of Pacquiao's medical records.

22   Mayweather's only support for his contention is an article he found on the Nevada Commission's

23   website.  This article, however, does not support Mayweather's proposition.

24          The article, titled "Steroids in Combat Sports: Adverse Effects on Health" does <u>not</u>

25   suggest that someone exhibiting certain symptoms has used steroids or that the presence of

26   certain symptoms is a barometer of steroid use.  Rather, the article discusses the effects steroids

27   can have on the human body—but it never says that evidence of these effects is an indication that

28

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102852-001/

9 of 17

1    a person is using or has used steroids.[3]  Mayweather does not present any evidence or authority

2    to support his theory of relevance.  Mayweather "has no medical training . . . and simply is not

3    qualified to interpret the article[] to support his contention . . . ." *Campbell v. California Dep't of*

4    *Corrections and Rehabilitation*, 2010 WL 3238911, at *8 (E.D. Cal. August 12, 2010) (rejecting

5    a litigant's efforts to link symptoms of food poisoning to a particular meal he ate, in part because

6    litigant did not provide evidence the particular "bacterium can only be transmitted by the

7    consumption of food as opposed to human contact").

8         Unable to demonstrate that inspection of all of Pacquiao's medical records is likely to

9    reveal anything remotely relevant to this lawsuit, Mayweather has not demonstrated it is entitled

10   to further inspection of Pacquiao's otherwise privileged medical records.  Mayweather has

11   already received all performance-enhancing drug tests performed on Pacquiao and Pacquiao's

12   complete medical files from the Nevada Athletic Commission and the Texas Department of

13   Licensing, which include physical examination reports.  Enough is enough.

14        *Fritsch v. City of Chula Vista*, 187 F.R.D. 614, 616 (S.D. Cal. 1999) is instructive.

15   There, plaintiff sued defendant for employment discrimination, retaliation, defamation, and

16   breach of an implied contract.  Defendants, like Mayweather here, sought "virtually all of

17   [plaintiff's] medical records" over a nine year period in an effort to uncover other "possible

18   sources of emotional distress."  The Court rejected this burdensome discovery tactic and quashed

19   subpoenas to third-parties, finding that defendants' requests "approache[d] the outer bounds of

20   relevance and the information requested may only marginally enhance the objectives of

21   providing information to the parties" and "any possible relevance of the requested information is

22   clearly outweighed by the hardship to the plaintiff that would necessarily be incurred in

23   providing her private medical records to her adversaries."  *Id.* at 634.  The same conclusion is

---

[3] The submission of the article without further verification is not even competent evidence that the content of the article is accurate.  *See Sweatman v. Yellow Freight System, Inc.*, 1996 WL 492980, at *2 (Ohio Ct. App. 1996) (affirming trial court's ruling that medical report was inadmissible because the contents were hearsay and the author of the report had neither authenticated nor verified it); *see also Hogge v. Stephens*, 2011 WL 2161100, at *3 (E.D. Va. 2011) (Plaintiff's averment "based on his own reading of inadmissible medical journals" is "simply not admissible.")

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102852-001/                                10 of 17

even more evident here, where Mayweather has not articulated any medically sound basis for believing that additional information would be found in Pacquiao general medical files that would be relevant to the parties' claims and defenses. *See also Doe v. City of Chula Vista*, 196 F.R.D. 562, 570 (S.D. Cal. 1999) ("scope of discovery into this sensitive area [of medical information] should be limited and confined to that information that is essential to a fair trial.")

Likewise, in Nevada, courts place restraints with respect to the discovery of medical records.[4]   In *Schlatter v. District Court*, 93 Nev. 189, 561 P.2d 1342 (1977), the Nevada Supreme Court expressly condemned the very approach Mayweather has taken here, *i.e.*, attempting to obtain *carte blanche* discovery of Pacquiao's entire medical file.  In that case, the Court concluded that the district court's order exceeded the permissible bounds of discovery because it allowed "carte blanche discovery of all information contained in these materials without regard to relevancy." *Id.*[5]

### 2.   The Information Sought is Privileged.

In addition to being irrelevant, the information Mayweather seeks by way of the Motion is also not discoverable because it is protected from disclosure under the doctor-patient privilege and right to privacy.

An abundance of federal and state authority protects from disclosure the very type of medical information sought by Mayweather. *See* HIPAA, Pub. L. No. 104-191, 110 Stat. 1936 (1996); NRS 49.225 ("A patient has a privilege to refuse to disclose and to prevent any other person from disclosing confidential communications among the patient, the patient's doctor or persons who are participating in the diagnosis or treatment under the direction of the doctor"); *Norman-Bloodshaw v. Lawrence Berkeley Laboratory*, 135 F.3d 1260, 1269 (9th Cir. 1998) ("Extension of the right to confidentiality to personal medical information recognizes there are

---

[4] As this is a diversity case, the issue of privilege is governed by Nevada state law.  *See* Fed. R. Evid. 501 ("in a civil case, state law governs privilege regarding a claim or defense for which state law supplies the rule of decision.")

[5] Mayweather suggests that his subpoenas to third parties were "limited [in] scope" because they defined the "solicited medical and physical examination records as those relating to the signs and symptoms associated with PEDs use." (Mot. at 15.)  As seen here, such is not a limitation at all, as Mayweather argues that all medical records without restriction may potentially contain references to his laundry list of symptoms.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102852-001/

11 of 17

1   few matters that are quite so personal as the status of one's health"); *Yin v. California*, 95 F.3d

2   864, 870 (9th Cir. 1996) ("We have previously held that individuals have a right protected under

3   the Due Process Clause of the Fifth or Fourteenth Amendments in the privacy of personal

4   medical information and records").

5          Pacquiao has a demonstrated interest in keeping his confidential medical records private,

6   and this Court should not endorse the indiscriminate probing into all of his records.  And while

7   NRS 49.245 provides an exception for privilege where the information is relevant to "*an element*

8   *of a claim or defense*," as discussed above, that exception does not apply here because

9   Mayweather's overbroad requests seek information that is not relevant to this case.  NRS 49.245

10  (emphasis added).  Mayweather's citation to *Potter v. West Side Transportation*, 188 F.R.D. 362

11  (D. Nev. 1999), is similarly inapposite. (Mot. at 21.)  There, plaintiffs sought emotional distress

12  damages after witnessing an accident. The court granted a motion to compel psychological

13  records relevant to the claimed injury.  *Id.* at 364.

14         Unlike the *Potter* case, the defendants (and the Court) are not being asked to simply take

15  Pacquiao's word that he did not use performance-enhancing drugs, and are not being denied

16  access to relevant medical records.  Pacquiao produced all drug test results in his possession and

17  facilitated productions of additional test results directly from the Texas Department of Licensing

18  and Nevada Athletic Commission.   All of these drug test results and athletic commission

19  documents show there is no evidence that Pacquiao has ever used performance-enhancing

20  drugs.[6]

---

21  [6]  Ironically, Mayweather has asserted the same exact privilege to deny Pacquiao medical

22  information relevant to Mayweather's countersuit for defamation.  (Dkt. No. 80.)  Despite his
    defamation claim, Mayweather has objected to the discovery by Pacquiao of Mayweather's

23  relevant medical information.



24
25
26
27
28  position during discovery is wholly inconsistent with the position he is espousing in this motion:

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102852-001/

### 3.   Pacquiao Has Already Produced All Relevant Medical Records.

During the parties' meet and confer, Mayweather made clear that he did not attempt to collect—and was not producing—medical information in the possession of third party caregivers (like his ███████████ .  The parties then agreed that each would subpoena materials directly from the third parties having such information, and each party would be allowed to first review the records for privilege before producing them to the other.  (Whitman Decl., ¶ 8.)  Consistent with that understanding, Pacquiao produced all medical records in his possession on November 29, and facilitated the production of additional materials from the Nevada Athletic Commission, the Texas Department of Licensing, and ███████████

### B.   Mayweather is Not Entitled to a General Medical Release.

The medical release proposed by Mayweather, and rejected by Pacquiao, was as overbroad as his discovery requests.  The release would have authorized third parties to "furnish copies of **all medical records**" to Mayweather. (Mot. Ex. T.) The release went as far as to include "All billing records."   The only limitation in the release applied to "psychiatric, psychotherapy or psychological notes or records."   (*Id.*)   As discussed in detail above, Mayweather is not entitled to all of Pacquiao's medical records and he presents absolutely no authority to compel Pacquiao to execute such a broad-sweeping, intrusive medical release.  *See, e.g.*, *Ammons v. Hannula*, 2008 WL 5111311, at *1 (W.D. Wis 2008) (limiting medical release "relevant medical records"); *Gilson v. Evergreen at Talbot Road L.L.C.*, 2005 WL 3841864, at *3 (W.D. Wash. 2005) (rejecting defendant's request for a "general medical records release" as "unnecessarily broad").

Pacquiao suggested a fair and measured approach to the production of medical records in the possession of third parties:  Mayweather serves a subpoena on a third party; Pacquiao obtains



( ██████ Depo. 59:8-15.)

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102852-001/

and reviews the responsive materials and produces the documents subject to Court's Protective Order; any lingering issues between the parties can be brought to the Court. This minimizes the burden on third parties and gives Pacquiao an opportunity to redact any private information irrelevant to the issues in this case. This process has already worked with the Texas Department of Licensing, Nevada Athletic Commission,[7] and ██████████   Mayweather was not denied a single responsive document, and the suggestion that Pacquiao has "obstructed" the production is unfounded. (Mot. at 15.) This process is especially fair given Mayweather's violation of the Court's Protective Order and order sealing documents.

### C.   Pacquiao Answered Interrogatory No. 15.

In further improper exploration into Pacquiao's general medical records, Mayweather asked Pacquiao to "provide the name and contact information of each doctor or other medical professional you have been treated by in the past ten years." (Mot., Ex. G.) Pacquiao objected to this Interrogatory as overbroad, oppressive, and not reasonably calculated to lead to the discovery of admissible evidence. (Whitman Decl., Ex. 1.) Despite the valid objections, Pacquiao investigated the request and supplemented the response. On November 21, after the Court entered the Protective Order, Pacquiao provided the name of his ████████████

████████████   (Mot., Ex. I.) ██████████████████████

██████████████████████████████████████

██████████████████████████████   (*Id.*)

After receiving Pacquiao's response on November 21, Mayweather did not raise any issues with regard to its completeness or sufficiency until the parties' December 27 meet and confer. On that call, Mayweather Jr. took the position that Pacquiao had not identified any doctors. Pacquiao pointed to his response to Interrogatory No. 15 which identified ██████

██████████████████████████████████

(Whitman Decl. ¶¶ 11-12.)

---

[7] Pacquiao was in the process of reviewing the materials from Nevada for production when Mayweather obtained them himself.

Gordon Silver
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102852-001/

1        Mayweather's request to compel a further response to this Interrogatory lacks foundation.

2   While Mayweather deposed ███████, it is unclear what effort, if any, he made to acquire

3   information or discovery from ███████   Instead, Mayweather wrongly asserts that Pacquiao is

4   withholding names of doctors because Mayweather believes that ███████████

5   ████████████████████████████████████ and because he

6   supposes there are "undoubtedly" other doctors who treated Pacquiao in the United States.  First,

7   after Mayweather filed this motion, counsel again conferred with Pacquiao and confirmed that

8   the response was complete and that ████████████████████.  (Whitman Decl.

9   ¶¶ 13-14.)  Mayweather has no information or basis to assert otherwise.  Second, Pacquiao does

10  not deny that ████████████████████████.  As he made

11  clear in his response and again at the meet and confer, ███████████████

12  ████████████████████████████████████████████

13  ███████

14       Mayweather cannot remotely satisfy his burden of demonstrating that this response is

15  insufficient or incomplete.  For example, in *Weaver v. Mateer and Harbert, P.A.*, --- F.R.D. ----,

16  2011 WL 5358710 (M.D. Fla. 2011), the plaintiff propounded interrogatories to the defendant,

17  who answered that he had no recollection and "the answer is 'unknown and unable to do so.'"

18  *Id.* at *1.  Like Mayweather here, the plaintiff moved to compel, arguing "[h]e [wa]s not satisfied

19  with [defendant's] responses to these interrogatories because in his opinion, [defendant] either

20  knows the answers or if he cannot recall, he can find the answer . . . in the records in his

21  possession." *Id.*  The court denied the motion, holding that "[t]he party seeking the discovery

22  has the burden of proving that a discovery response is inadequate. [Plaintiff] has not met his

23  burden of showing [the] answers to the interrogatories are inadequate, incomplete or evasive."

24  *Id.* at *2.

25       The same is true here.  Pacquiao has provided all the information he has, and

26  Mayweather's general dissatisfaction with Pacquiao's response is no basis for a motion to

27  compel.  *See also*, *Daiflon, Inc., v. Allied Chem. Corp.*, 534 F.2d 221, 227 (10th Cir. 1976)

28  ("appellees had the burden of proving the answer to their interrogatory was indeed incomplete");

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102852-001/

1   *Tara Woods Ltd. Partnership v. Fannie Mae*, 265 F.R.D. 561, 566 (D. Colo. 2010) ("The party

2   moving to compel discovery must prove that the opposing party's answers are incomplete.")

3   **IV.**     **CONCLUSION**

4         For the foregoing reasons, Pacquiao respectfully requests the Court deny Mayweather's

5   motion to compel.

6         Dated this 23rd day of January 2012.

7                              GORDON SILVER

8

9                             /s/ Franchesca V. Van Buren_____

                            ERIC D. HONE

10                             Nevada Bar No. 8449

                            FRANCHESCA V. VAN BUREN

11                             fvanburen@gordonsilver.com

                            DANIEL M. PETROCELLI (Cal S.B. #97802)

12                             (admitted *pro hac vice*)

                            dpetrocelli@omm.com

13                             DAVID MARROSO (Cal. S.B. #211655)

                            (admitted *pro hac vice*)

14                             dmarroso@omm.com

15                             *Attorneys for Plaintiff/Counter-Defendant*

16                             *Emmanuel "Manny" Pacquiao*

17

18

19

20

21

22

23

24

25

26

27

28

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102852-001/

1

## **CERTIFICATE OF SERVICE**

2      The undersigned, an employee of Gordon Silver, hereby certifies that on the 23rd day of

3   January 2012 she served a copy of the OPPOSITION TO EMERGENCY MOTION TO

4   COMPEL DISCOVERY AND FOR SANCTIONS, via the Court's CM/ECF electronic filing

5   system and by placing said copy in an envelope, postage fully prepaid, in the U.S. Mail at Las

6   Vegas, Nevada, said envelope addressed to:

7   Mark G. Tratos, Esq.
    GREENBERG TRAURIG, LLP
8   3773 Howard Hughes Parkway, Suite 500N
    Las Vegas, NV 89169
9   Fax:  (702) 792-9002
    Attorney for: Mayweather Promotions, LLC
10  Defendant

11  Malcolm LaVergne
    THE LAVERGNE LAW GROUP
12  1212 South Casino Center Boulevard
    Las Vegas, Nevada 89104
13  Fax:  (702) 966-3117
    Attorney for: Floyd Mayweather, Sr.
14  Defendant

15

16                                              /s/ Bobbye Donaldson
17                                              Bobbye Donaldson, an employee of
                                                GORDON SILVER
18

19

20

21

22

23

24

25

26

27

28

**Gordon Silver**
Attorneys At Law
Ninth Floor
3960 Howard Hughes Pkwy
Las Vegas, Nevada 89169
(702) 796-5555

102852-001/

17 of 17